## F. W. STOCK & SONS, Inc. v. THOMPSON.
### No. 11340.

United States Court of Appeals
Sixth Circuit.

Feb. 7, 1952.

494

George C. Tilley, Detroit, Mich. (William J. Shaw, George C. Tilley, Detroit, Mich., on the brief; Miller, Canfield, Paddock & Stone, Detroit, Mich., of counsel), for appellant.

Major Bird, Adrian, Mich. (Major Bird, Adrian, Mich., on the brief; Bourns & Bird, Adrian, Mich., of counsel), for appellees.

Before HICKS, Chief Judge, and SIMONS and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This action was brought nearly eleven years ago by the appellee, Blair Thompson, on behalf of himself and as representative of "other similarly situated employees or former employees" of the appellant corporation. The complaint sought recovery of unpaid minimum wages and unpaid overtime compensation in the amount of $28,000, plus an additional equal amount as liquidated damages, pursuant to the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–216. The

action was not brought to trial until nearly four years after its institution; and, unfortunately, the District Judge who tried it died before pronouncing judgment.

By agreement of the parties several years later, the determination of the case was submitted to a successor District Judge, Honorable Theodore Levin, to be tried by him upon the record made before his deceased predecessor. After obviously painstaking study of the record and careful consideration of the briefs and arguments of the attorneys, Judge Levin filed an opinion, 93 F.Supp. 213, embracing findings of fact and conclusions of law, and entered judgment in favor of 28 employees in varying amounts for overtime and straight time for work under minimum hours. He also allowed one employee an agreed amount of damages and awarded $1,250 in fees to attorneys for appellee. The claims of appellees for liquidated damages were denied, for the reason that appellant had shown "to the satisfaction of the court that the act or omission" giving rise to the cause of action was in good faith; and that, in view of all existing facts at the time of the violations found, the appellant had reasonable grounds for believing that its conduct was not in violation of the Fair Labor Standards Act. See section 11 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 260.

During the period of time involved from October 24, 1938, to February 1, 1941, the appellant employed some one hundred persons, of whom 28 were plaintiffs in the instant action and may be classified as two engineers, ten millers and oilers, and sixteen flour and feed packers: all concededly engaged in the production of goods for interstate commerce.

There are two issues in the case: (1) whether periods allotted for lunch were free periods or working time; and (2) if the periods are found to be working time, are the claims of the 28 employees barred by the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251, et seq.

Briefly stated, prior to the effective date of the Fair Labor Standards Act in October 1938 appellant operated its mill twenty-four hours a day, six days a week. Its employees worked in three eight-hour shifts, being paid on an hourly basis which gave them compensation for a forty-eight-hour week. The time consumed in eating lunch was not deducted from the hours worked by the employees in computing their pay. As found by the District Court on substantial credible evidence, when the Fair Labor Standards Act became effective in October of 1938 making the statutory maximum workweek forty-four hours, an understanding was reached between appellant and its employees that, in order to continue the operation of the mill on a twenty-four-hour day basis with the same three shifts, there would be deducted from the time of the employees during the first year of the coverage of the Act a lunch period fixed at forty minutes. A compensatory increase was made in the hourly rate of pay to the employees, "so that their take-home pay would not be reduced." The actual starting and quitting time for the employees remained the same; and the forty-minute lunch period reduced the workweek to the exact statutory maximum. In short, these employees were merely credited with a forty-four-hour week instead of the previously credited forty-eight-hour week, although they put in the same hours of work. The change was merely a bookkeeping transaction.

In October, 1939, the maximum workweek as fixed by the Fair Labor Standards Act was reduced to forty-two hours and, a year later, to forty hours. So, in October, 1939, the appellant fixed the workweek at forty hours, but did so by allotting eighty minutes as a lunch period for millers and oilers, and forty minutes as a lunch period for packers and feeders whose shifts, however, were shortened by forty minutes by using relief packers obtained from the loading gang. The hourly rates of pay were increased so as to maintain the same take-home pay. Again, the transaction was merely one of bookkeeping.

■ We think the succinct fact findings of the trial judge are well supported by the evidence found in the record as a whole. Inasmuch as he did not see or hear the witnesses, but tried the case on the record made before his predecessor, we

think, as appellant contends, that his findings do not have the same binding effect upon an appellate court as if made by a trier of facts who had the superior opportunity of judging the credibility of the witnesses by personal observation of them while they were on the witness stand. See Equitable Life Assur. Soc. v. Irelan, 9 Cir., 123 F.2d 462, 464, and cases there cited.

■ We agree with the trial judge that the evidence shows that the two engineers as a matter of fact worked forty minutes each day, during the respective periods of time in issue, for which they were not paid. The engineers were not expected to leave their engines unattended at any time during their shifts, because the engines had to be constantly observed to assure safe and efficient operation. One engineer, Burlew, testified that the chief engineer ordered him not to leave the engine room during the so-called lunch period; and this supervisory official was not introduced by appellant to deny the statement. The other engineer, Stubberfield, testified that he usually ate his lunch as he sat watching the gauge while the tank was filling, so as to see that it did not run over. Testimony of both engineers showed that their actual working time during the first year of the operation of the Act was eight hours daily, and from the second year of its operation on was seven hours and twenty minutes daily. These working hours were for a full six-day week.

As pointed out by the District Judge in his opinion, the duties of the millers and oilers and the flour and feed packers were all related to the operation of the mill machinery, which was not stopped at any time during a twenty-four-hour period except as the result of a serious break-down. Frequent chokeups in the operation of the machinery required constant attention; and all these employees were required to stand by on the alert. Their lunch periods were often interrupted by emergencies requiring immediate attention. Upon the whole record, we think it has been shown that all these employees were honestly of the opinion that their superior did not desire them to leave the premises during lunch periods,

but expected them to eat lunches in the immediate vicinity of their work and to resume work as soon as they had finished eating. At least they pursued this course. Many testified that they were ordered by their superiors to remain on the company premises during their entire shifts.

So it seems to have been proven adequately that the employees did not have a free lunch period during which they could serve their own interest and do as they pleased, but that their duties and responsibilities to their employer were continued during the lunch periods. As the District Judge well said during a colloquy with counsel: "A man who has to oil machinery with a sandwich in his hand is not having a free lunch period." He made the further appropriate comment that a man who has to have his eyes glued upon the watching of grain coming down from floors above and be careful that there is no stoppage during the entire eight hours of his shift, including his lunch period, does not have a free lunch period.

The plan of operation evolved by the president of the appellant company was, as stated by him, to go down to a seven-hour and twenty-minute workday after October, 1938, and then to drop to a six-and-two-thirds-hour day, or six hours and forty minutes, in October, 1939, anticipating 1940, so that the company would not have to be "confused" again. This plan was worked out by President Stock while under the impression that his company did not have to pay for so-called lunch periods. As stated by the District Judge, there was undoubtedly an agreement on the part of the employer to pay for services performed by its employees and the fact that part of the working time was designated as a lunch period does not change the fact that work was actually done during that time, and that the agreement was to pay the employees for work done over the statutory maximum; and, inasmuch as the lunch periods were actually periods in which work was done, the appellant is liable also for the regular straight-time rate for such hours worked.

■ We concur in the conclusion of the District Judge: "Time spent predomin-

antly for the employer's benefit during a period, although designated as a lunch period or under any other designation, nevertheless constitutes working time compensable under the provisions of the Fair Labor Standards Act." [93 F.Supp. 216.]

This conclusion is supported by Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118, wherein the Supreme Court sustained the conclusion of the District Court and the Court of Appeals, 7 Cir., 140 F.2d 356, that time spent on the premises of an employer by fire guards who were subject to call [excluding the time spent in sleeping and eating but including time spent in recreation or in idling] was working time compensable under the maximum hours and overtime provisions of the Fair Labor Standards Act. Mr. Justice Jackson spoke the unanimous opinion: "Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case. * * *

"We think the Labor Standards Act does not exclude as working time periods contracted for and spent on duty in the circumstances disclosed here, merely because the nature of the duty left time hanging heavy on the employees' hands and because the employer and employee cooperated in trying to make the confinement and idleness incident to it more tolerable." 323 U.S. 133, 134, 65 S.Ct. 168, 89 L.Ed. 118.

On the same day, in Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124, the Supreme Court declared that whether time spent on an employer's premises or in hailing distance therefrom by fire guards subject to call was working time under the Fair Labor Standards Act is a question of fact to be resolved by appropriate findings of the trial court; and that no legal principle precluded a determination that waiting time was working time under the Act. A judgment for the employer was reversed and the cause was remanded for further proceedings consistent with the Supreme Court's opinion.

In Travis v. Ray, D.C.W.D.Ky., 41 F. Supp. 6, Judge Miller (now a member of this court) held that, in determining the pay to which the driver of a motor bus was entitled under the Fair Labor Standards Act, waiting periods between his trips should be included in the total number of hours, in calculating the driver's employment, where he was expected to be on the job during such periods and the periods were not long enough to permit him to go elsewhere or to engage in other activities.

The Court of Appeals for the Ninth Circuit held that where a normal workday, both before and after enactment of the Fair Labor Standards Act, consisted of eight hours, a new wage agreement between a company and a union setting up a so-called split-day plan whereby the workday was divided into two parts—one of which was assigned a reduced straight or regular hourly rate of pay and the other of which was treated as overtime with the result that the daily wage for an eight-hour workday continued substantially as it had been prior to the Act—violated the overtime requirements of the Act and was therefore illegal. Robertson v. Alaska Juneau Gold Mining Co., 157 F.2d 876, 879. The Court of Appeals said: "An express agreement to work for less than the basic minimum statutory rates is invalid, and a release given an employer by an employee freeing the employer from further claims under the Fair Labor Standards Act, will not estop the employee from later recovering liquidated damages for unpaid wages and overtime, and attorney's fees under the Act since the employees' rights under § 16(b) of the Act, although conferred on private persons, are statutory rights which affect the public interest and, hence, rights which may not be waived by an employee. Further, acceptance by an employee of payments of regular and

overtime wages will not estop him from suing to recover the amount due him when he proves he actually worked longer." The court held that the computation of regular and overtime rates must be considered in the same category as an employee's right to the statutory minimum wage. We are in accord with this holding and find the principle applicable here in rejection of the argument of appellant that the employees are not entitled to recover compensation for their lunch periods other than overtime compensation for hours worked in excess of the statutory maximum workweek.

■ There is no merit in the contention of appellant that the District Court lacked jurisdiction to allow recovery of compensation for lunch periods other than overtime compensation for hours worked in excess of the maximum statutory workweek. It is settled law that when a United States District Court has acquired jurisdiction by virtue of a federal question raised by the bill of complaint, the court has jurisdiction to determine all questions in the case, local as well as federal. Railroad Commission of California v. Pacific Gas & Electric Co., 302 U.S. 388, 391, 58 S.Ct. 334, 82 L.Ed. 319. The complaint sets forth an action for the recovery of minimum wages, as well as overtime compensation, and the recovery of minimum wages is provided for by the Fair Labor Standards Act. The straight time allowances awarded appellees by the District Court were based upon computations covering all straight time hours made up of lunch hour credits falling within certain workweeks in which the total number of hours worked were less than the statutory maximum. The employees were entitled to receive and were awarded compensation for such straight time at the regular rate then being received by them.

The opinion of this court in General Mills, Inc. v. Williams, 6 Cir., 132 F.2d 367, cited by appellant, adds no weight to its argument. There, it was merely recognized that an employer has the right to make contractual stipulations pertaining to wages and hours, provided the employees are not compensated in a lower scale than the minimum rate provided by the Fair Labor Standards Act for hours worked.

Fox v. Summit King Mines, 9 Cir., 143 F.2d 926, also cited by appellant, held only that the conclusion of the District Judge that the employees were not working while eating lunch but were resting, reading, or amusing themselves during a free lunch period could not be said by the Court of Appeals to be wrong. In the present controversy, it was found by the District Court, on the basis of a preponderance of evidence, that the employees were not enjoying a lunch period free from working responsibility and attention to prescribed duties. In view of all the evidence in the case, we agree with this finding.

■ It is well established that a contract, whereby an employer agrees to pay for only a part of the hours which an employee is required to work, is invalid, it not being permissible to frustrate in any such manner the purpose of Congress in enacting the Fair Labor Standards Act. See Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, 120.

■ This brings us to the effect of the Portal-to-Portal Act, 29 U.S.C.A. § 251, et seq., on the right of appellees to the recoveries allowed them in the District Court. The sensational and drastic opinion of Mr. Justice Murphy in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, reversing the judgment pronounced by this court in 6 Cir., 149 F.2d 461, caused Congress, in its preamble to the Portal-to-Portal Act, to castigate in the strongest terms the Supreme Court's erroneous interpretation of the Fair Labor Standards Act of 1938. But, notwithstanding this, the Portal-to-Portal Act indicates no intention on the part of the Congress to go so far as to bar recovery by employees in a factual situation similar to that revealed in this case. Here, the employees are not basing their claims for compensation upon "walking" time, or time consumed in preliminary practices before commencement of productive work, but are seeking compensation for actual duties performed during working hours for which they were not paid.

■ We are in accord with the holding of the Court of Appeals for the Eighth Circuit that the requirement of the Portal-to-Portal Act, that in an action to recover overtime compensation an express contract or custom must be alleged, was intended to refer only to claims for time consumed in walking to work, or in other activities either before or after normal working hours, and was not intended to destroy claims by workers for actual time devoted by them to normal work. The court held that night telephone operators were on duty performing compensable activities during the entire eleven hours spent by them at defendant's exchanges, inasmuch as during "sleeping time" allotted them automatic electric bells were turned on so as to awaken them to respond to calls. Central Missouri Tel. Co. v. Conwell, 8 Cir., 170 F.2d 641.

In Biggs v. Joshua Hendy Corporation, 9 Cir., 183 F.2d 515, 520, the Court of Appeals said: "Cross-appellants further contend that work performed by appellants during lunch periods cannot be the basis for recovery under the Fair Labor Standards Act by reason of section 2 of the Portal-to-Portal Act, 29 U.S.C.A. § 252, because such work is not made compensable by the express provision of a contract within the meaning of section 2(a)(1). That section is directed against claims for compensation for activities, such as dressing for work, traveling within the plant to the job location, etc., which are different from the activities which comprise the regular, normal part of the employment. The section has no application where, as here, the work for which compensation is being claimed is the same kind of work as was performed throughout the remainder of the workweek." See also Joshua Hendy Corporation v. Mills, 9 Cir., 169 F.2d 898, 900. It was there held that,

where a shipyard engineer was employed subject to a union agreement allowing a one-half-hour lunch period on the employees' time but the engineer was required to tend boilers while he ate at his desk, the employee was entitled to overtime compensation when the lunch period constituted overtime employment in connection with the other hours worked by him during the day. This decision was rendered after the Portal-to-Portal Act of 1947 had become operative. The court said: "The lunch period provisions of the contract could have no application to the engineers since, during the time they were on shift, no 'employees' time' could be found in which they could eat lunch."

We think the language of this court in Michigan Window Cleaning Co. v. Martino, 6 Cir., 173 F.2d 466, 469, is applicable to the present situation: "This is not a case which deals with claims for payment of activities which were newly perceived after the decision of the Supreme Court in Anderson v. Mt. Clemens Pottery Co., supra, and for which recovery was sought even though it had not theretofore been thought that the time spent in such activity was compensable working time. The [Portal-to-Portal] Act clearly distinguishes between activities which had usually been paid for and those which, though incidental to work for an employer, did not constitute such work either by virtue of contract or custom."

This opinion was cited by Chief Judge Knox in Knudsen v. Lee & Simmons, D.C. S.D.N.Y., 89 F.Supp. 400, 407. Compare expression of this court in Smith v. Cleveland Pneumatic Tool Co., 6 Cir., 173 F.2d 775, in the first paragraph of the second column of the *per curiam* opinion.

For the reasons which we have attempted to make obvious, the judgment of the District Court is affirmed.