## NEAL v. BRAUGHTON et al.

### Civ. No. 525.

United States District Court
W. D. Arkansas, Hot Springs Division.

April 30, 1953.

Brooks Bradley, Little Rock, Ark., for plaintiff.

David L. Mallory, Marshall N. Carlisle and Lloyd E. Darnell, Hot Springs, for defendants.

JOHN E. MILLER, District Judge.

### Statement.

On September 20, 1952, plaintiff filed his complaint in which he alleged that the defendants, operating as a partnership, were engaged in the manufacture and production of lumber for interstate commerce within the meaning of the Fair Labor Standards Act; that during the work weeks beginning October 26, 1950, and ending January 7, 1952, defendants employed twenty-five or more persons in the production of lumber for interstate commerce; that the Court has jurisdiction by virtue of Title 28 U.S.C. § 1337 and Title 29 U.S.C.A. § 216(b); that the defendants employed the plaintiff to night watch and to clean up around their mill; that during the period from October 26, 1950, to January 7, 1952, with the exception of one week when plaintiff was off duty, defendants employed plaintiff in their place of business for eighty-four hours each week and paid plaintiff at the rate of $150 per month; that plaintiff was entitled under the Act to a rate of pay not less than seventy-five cents per hour for the first forty hours each week, and at a rate of pay not less than $1.12½ per hour for all hours in excess of forty each week; that plaintiff should recover from the defendants the amount of $2724.50 for unpaid minimum wages and overtime compensation, an additional equal amount as liquidated damages, together with costs and a reasonable attorney's fee.

On October 9, 1952, defendants filed a motion to make more definite and certain, to which motion the plaintiff responded on October 14, 1952, and on October 15, 1952, the Court overruled defendants' motion.

Thereafter, on October 29, 1952, defendants filed their answer in which they admitted that they were operating as a partnership and were engaged in the manufacture of lumber for interstate commerce; that during the period from October 26, 1950, to January 7, 1952, some twenty-five persons, more or less, were employed by them in the processing of lumber for interstate shipment; that the Court has jurisdiction to entertain the suit; and that plaintiff was employed by them as a night watchman from October 26, 1950, to January 7, 1952. But, defendants denied that plaintiff had worked in excess of forty

hours in any work week, denied that they had failed to pay him minimum wages required by law, and affirmatively stated that they paid plaintiff at the rate of $150 per month.

On April 8 and 9, 1953, the case was tried to the Court without the intervention of a jury, and at the conclusion of the trial the Court requested counsel to furnish briefs in support of their respective contentions. This has now been done, and, after considering the pleadings, ore tenus testimony of the witnesses, and briefs of the parties, the Court now makes and files its findings of fact and conclusions of law, separately stated.

## Findings of Fact

### 1.

The defendants, Vernon Braughton, Harley Bates, and Raymond Bates, operate as a partnership, and during the period from October 26, 1950, to January 7, 1952, they were engaged in the production of lumber for shipment in interstate commerce and employed twenty-five or more persons, including the plaintiff, in such production.

### 2.

During the time from October 26, 1950, to January 7, 1952, plaintiff was employed by defendants at a salary of $150 per month. The defendants kept no record of the hours worked by plaintiff. In following this practice defendants were acting in good faith and in reliance upon advice given them by a representative of the Wage and Hour Division. Although plaintiff's salary was stated to be $150 per month, he was actually paid $75 every two weeks.

### 3.

Plaintiff was 68 years of age at the time he was employed by defendants to night watch and to clean up their mill. He was employed to work from 8:00 p. m. each day until 3:00 to 4:00 a. m. the next morning, seven days a week, and was allowed an hour for supper from 12:00 p. m. to 1:00 a. m. However, as a matter of fact plaintiff was to a great extent his own boss as to the hours he worked. Sometimes, especially during the winter months,

he came to work early in order to clean up the mill before dark came. Often he would come to work as early as 5:00 p. m. At other times he would begin at 5:30, 6:00, 7:00 and at various other times. Usually when he came to work early, he would go home for supper sometime between 7:00 p. m. and 11:00 p. m. Also, he would often leave the mill at various times during the night for short periods of time. Frequently plaintiff did not work at all because of sickness or other reasons. At times plaintiff was seen sleeping while he was supposed to be on duty. Plaintiff ordinarily quit working and went home between 3:00 a. m. and 4:00 a. m. although occasionally he stayed later than 4:00 a. m.

### 4.

Defendants knew that plaintiff often began working before 8:00 p. m. and made no complaint about it since plaintiff stated that he wanted to clean the mill before dark. Plaintiff did not always take an hour off to eat from 12:00 p. m. to 1:00 a. m., but none of the defendants had any knowledge that he sometimes worked during that time. Likewise, though plaintiff was at the mill later than 4:00 a. m. occasionally, defendants had no knowledge of that fact.

Defendants had knowledge of the fact that plaintiff sometimes slept on the job, often left the mill for various periods of time, and frequently did not come to work at all. Nevertheless, defendants did not discharge him, partly because they felt sorry for him and partly because they did not want to antagonize plaintiff's brother who also worked for them and who is and was an excellent worker. However, defendants did "dock" plaintiff a few nights pay for not coming to work.

### 5.

In January, 1951, plaintiff was off for two weeks and was not paid for this period. Also, at other times he was docked a a day or two at a time totaling about seven days. Thus, during the 62 weeks from October 26, 1950, to January 7, 1952, plaintiff was paid $37.50 per week for 59 weeks, a total of $2,212.50.

A consideration of all the testimony convinces the Court that plaintiff was employed by defendants and worked seven hours a night, seven days a week, during the 59 weeks involved in this action.

6.

A reasonable attorney's fee for the plaintiff is $150.

## Discussion

The rules of law governing actions brought under the provisions of the Fair Labor Standards Act, are, for the most part, well established.

■ An employer is required to pay an employee who is engaged in commerce or in the production of goods for commerce a minimum of seventy-five cents an hour, and for any time worked in excess of forty hours during a week, the employer must pay said employee one and one-half times the regular rate of pay. 29 U.S.C.A., §§ 206 and 207.

■ Employers subject to the provisions of the Fair Labor Standards Act must keep records of persons employed by them and of the wages, hours, and other conditions and practices of employment. 29 U.S.C.A. § 211.

■ A violation of the minimum wage or maximum hour provisions of the Act subjects the employer to liability to employees in the amount of unpaid minimum wages or unpaid overtime compensation, an additional amount as liquidated damages, a reasonable attorney's fee, and costs of the action. 29 U.S.C.A. § 216.

■ The burden of proof is upon the employee to establish by a preponderance of the evidence the number of hours of overtime worked each week and the amount of wages due each pay period, and he must produce evidence sufficient to permit a finding without resort to conjecture that he worked a definite number of overtime hours. Mornford v. Andrews, 5 Cir., 151 F.2d 511; Lawley & Son Corporation v. South, 1 Cir., 140 F.2d 439, certiorari denied 322 U.S. 746, 64 S.Ct. 1156, 88 L.Ed. 1578; Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, 118; Rankin v. Jonathan Logan, Inc., D.C.N.J., 98 F.Supp. 1; Marchant v. Sands Taylor & Wood Co., D.C.Mass., 75 F.Supp. 783; Bloch v. Bell, D.C.Ky., 63 F.Supp. 863; Davies v. Onyx Oils & Resins, Inc., D.C.N.J., 63 F.Supp. 777; 169 A.L.R. 1337.

■ However, if an employee proves that he has in fact performed work for which he was not compensated as required by law, and introduces sufficient evidence to establish the amount and extent of that work as a matter of just and reasonable inference, then the burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the employee's evidence. If the employer does not produce such evidence, the Court may award damages to the employee even though the result is only an approximation. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515; Handler v. Thrasher, 10 Cir., 191 F.2d 120.

In a case somewhat similar to the instant case, the Court in Bloch v. Bell, supra, at page 865 of 63 F.Supp., said:

"The complainant has the burden of establishing by competent evidence the existence and extent of overtime employment. Where the evidence is uncertain and conjectural as to the amount of overtime employment there is not sufficient substance upon which a finding can be predicated. Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172. But this does not mean that documentary evidence is necessary to establish the plaintiff's claim or that the plaintiff's evidence must establish his claim in full. Even though the evidence may be uncertain as to the exact amount of overtime employment, yet it may show very conclusively that a certain minimum amount of overtime employment actually existed. * * * In this case the complainant claims two hours overtime employment during the five regular work days of each week, and an additional four hours of overtime employment on Saturday. The evidence is too uncertain annd indefinite to support the claim for the two hours during the five

regular work days. During those five days he worked approximately 8 hours a day for a total of 40 hours, sometimes more, sometimes less. No accurate record is available to show whether, over the period of time in question, he exceeded or fell below the prescribed 40 hours for the first five work days. The evidence justifies the finding that the complainant worked 40 hours on the first 5 days in each of the work-weeks in question, but it is insufficient to establish how much, if any, overtime work was given during those days. Although the exact time that the complainant worked on Saturdays is not shown by the evidence, yet it is definitely shown that the complainant worked at least three and one-half hours on the Saturdays that the plant was in operation. It was in operation on all but 10 or 12 Saturdays during each year. Accordingly, the evidence is sufficient to establish the complainant's claim for overtime employment to the extent of three and one-half hours per week for 40 of the 52 weeks of the year."

■ The term "employ" includes to suffer or permit to work. 29 U.S.C.A. § 203 (g); Walling v. Jacksonville Terminal Co., 5 Cir., 148 F.2d 768. The words "to suffer or permit to work" do not mean that permitting someone to work for a third person or the worker's own self constitutes a person an employer bound to pay statutory wages. They mean that a person is an employer if he permits another to work for him, though he has not expressly hired or employed him. Walling v. Jacksonville Terminal Co., supra; Walling v. McKay, D.C.Neb., 70 F.Supp. 160. And the words "suffer" and "permit" mean with the knowledge or consent of the employer. Fox v. Summit King Mines, Limited, 9 Cir., 143 F.2d 926, 932; Mabee Oil & Gas Co. v. Thomas, 195 Okl. 437, 158 P.2d 713; 169 A.L.R. 1318.

■ Even though a certain period may be designated as a lunch period, if that time is spent predominantly for the employer's benefit it is "working time" for purposes of the Fair Labor Standards Act. F. W Stock & Sons, Inc., v. Thompson, 6 Cir.,

194 F.2d 493. But, if the employee is free to leave the premises and do as he pleases during lunch time, such time is not "working time" within the meaning of the Act. Fox v. Summit King Mines, Limited, supra; Thomas v. Peerless Carbon Co., D.C. Tex., 62 F.Supp. 154.

■ Even "sleeping time" may be working time when such time is spent predominantly for the employer's benefit. Central Missouri Tel. Co. v. Conwell, 8 Cir., 170 F.2d 641.

■ If an employer acts in good faith and has reasonable grounds for believing that his actions are in conformity with the Fair Labor Standards Act, the Court in its discretion may refrain from awarding liquidated damages to the complaining employee. 29 U.S.C.A., § 260; F. W. Stock & Sons, Inc., v. Thompson, supra; Anderson v. Avery Corporation, D.C.Mich., 84 F. Supp. 55; 21 A.L.R.2d 1384, 1387.

■ When an employee is compensated at a weekly salary, the proper formula for computing his regular hourly rate of compensation is to divide the weekly wage by the number of hours worked each week. Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L. Ed. 1682; Sawyer v. Selig Mfg. Co., D.C. Mass., 74 F.Supp. 319.

As heretofore stated, the above rules of law are well settled, and in the instant case the disagreement of the parties is on the facts rather than the law.

Plaintiff in his brief contends that "the evidence is sufficient to establish the contention of the plaintiff that he was employed to work 12 hours a day and that he did work twelve hours a day during the period sued for." On the other hand, the defendants contend that plaintiff failed to prove by a preponderance of the evidence that he worked any overtime whatsoever.

The testimony in the case is conflicting. The plaintiff testified that he was employed to work twelve hours a day; that he worked from 5:00 p.m. to 5:00 a.m., seven nights a week for the first ten months; that he never went home to eat, or for any other purpose, except once when his house caught on fire; that it took him three and one-

half to four hours to clean up the mill; and that his wife and son often helped him clean the mill. However, he admitted that defendants did not tell him to go to work at 5:00 p.m.; that after the first ten months he began to take off from work occasionally; and that at the time he was employed he thought $150 per month was a fair salary for his job. He also stated that he did not know if defendants were aware of the alleged fact that he worked until 5:00 a.m. each morning, and he refused to state why he quit working for the defendants.

The testimony of plaintiff's wife and son generally corroborates his testimony, except his wife testified that he went to work at 5:30 p.m. But plaintiff's only non-interested witness, Brad Knight, who was formerly employed by defendants as a fireman on the 3:00 p.m. to 11:00 p.m. shift, testified that plaintiff came to work at various times ranging from 5:00 p.m. to 7:00 p.m.; that he often went home for supper about 7:00, 7:30, or 8:00 p. m.; that sometimes he did not come to work at all; and that he could clean the mill in an hour's steady work. Mr. Knight occasionally worked a double shift, i.e., from 3:00 p. m. until 7:00 a. m., and he testified that on an average plaintiff quit work at approximately 4:00 a. m.

For the defendants, Roscoe Herron, a fireman who took the place of Brad Knight on the 3:00 p.m. to 11:00 p.m. shift, testified that plaintiff left every night before 11:00, stating that he was going for supper. Mr. Herron also testified that he sometimes saw plaintiff very still, but did not know if he was asleep.

Austin Edge, fireman on the 11:00 p.m. to 7:00 a.m. shift, testified that plaintiff usually quit work between 3:00 a.m. and 4:00 a. m. or earlier in the morning; that sometimes plaintiff was not there when he came on duty; and that at times plaintiff would go home for coffee, etc.

Bill Slezha, a friend of Brad Knight, testified that he visited Mr. Knight almost every night from about 8:00 or 9:00 p.m. until Knight completed his shift at 11:00 p.m.; that four or five times a week plaintiff would go home for varying periods of time; that sometimes plaintiff left with his wife and granddaughter; and that occasionally plaintiff was sick and did not come back to work after leaving.

The defendant, Vernon Braughton, testified that he told plaintiff to begin work at 8:00 p.m. and leave from 3:00 to 4:00 a.m., and that he could have an hour off at 12:00 p.m.; that he did not know if plaintiff took the hour off; that he knew that plaintiff often came to work before 8:00 p.m.; that plaintiff was not there at times but that he did not discharge plaintiff because he felt sorry for him; that the danger of fire around the mill diminished after midnight; that after the Wage and Hour representative informed them in January, 1952, of the necessity of keeping hourly records, they installed time clocks at various locations and required plaintiff to punch them on his rounds; that plaintiff did not state why he quit a short time thereafter, but that plaintiff had complained about punching the clock at regular intervals; and that no proceeding was instituted against the defendants by the Wage and Hour Division because of their failure to keep proper records as to plaintiff's employment.

The defendant, Harley Bates, testified that plaintiff was absent from work at various times and that he occasionally caught plaintiff sleeping on the job.

The defendant, Raymond Bates, testified that numerous times he caught plaintiff asleep or absent from the mill, but that he did not discharge plaintiff because he felt sorry for him and did not want to lose the services of plaintiff's brother who also worked for defendants; and that after January, 1952, plaintiff's hours were 9:00 p.m. to 3:00 a.m.

Miss Juanita Bates, daughter of Harley Bates and bookkeeper for the partnership, testified that she kept time records on all employees except plaintiff, and that plaintiff was sometimes docked for not coming to work.

The circumstances in the case tend to support the defendants' testimony rather than that of the plaintiff. Plaintiff was 68 years of age at the time he commenced working for defendants. His home was only two

782

blocks from the mill. There was very little, if any, supervision over his work and he was for all practical purposes his own boss as to the hours he worked. Soon after he was put on a six hour shift and required to punch time clocks regularly, he left his employment with the defendants. These circumstances alone are sufficient to cast serious doubts upon plaintiff's testimony that he worked 12 hours a day, seven days a week. And the fact that plaintiff's own witness, as well as defendants' witnesses, testified directly contrary to plaintiff convinces the Court that there is no merit in plaintiff's contention that he worked 12 hours a day, seven days a week. The question thus presented for determination is whether plaintiff worked *any* overtime for which he was not properly compensated, and if so, *how much?*

■■■■ The Court feels that plaintiff has established by a preponderance of the evidence that he worked at least seven hours a day, seven days a week, i.e., each day he worked from 8:00 p. m. to 4:00 a. m., with an hour off for supper. Although plaintiff did not always take off an hour for supper, he had the right to do so and defendants had no knowledge of the fact that he did not always take that time off. Therefore, since they had no knowledge that he sometimes worked during this time, it cannot be said that they suffered and permitted him to work, and it follows that this time was not working time. Fox v. Summit King Mines, limited, supra; Mabee Oil & Gas Co. v. Thomas, supra. The same thing is true as to the few times plaintiff worked after 4:00 a. m., that is, defendant had no knowledge of this fact and thus did not suffer and permit him to work after 4:00 a. m.

In reference to the meal time, plaintiff argues in his brief, "Mr. Vernon Praughton testified that Mr. Neal was supposed to take off an hour at midnight to eat his lunch. Mr. Neal denied this. Even though this time was consumed in eating but Neal remained on the job it would be considered as working time." Assuming plaintiff's premise, his statement of the law would be true. However, there was no evidence that plaintiff was required to remain on the job

during this time, and so far as appears from the record, he was free to go home or do anything else during his hour off. And, in fact, he did go home most nights, although he often went before 12:00 p. m. Consequently, this meal time cannot be considered working time. Fox v. Summit King Mines, Limited, supra; Thomas v. Peerless Carbon Co., D.C.Tex., supra.

■■■■ Plaintiff also argues that even if plaintiff slept on the job he would be entitled to compensation under the conditions claimed. It is true that if plaintiff, while sleeping, was nevertheless spending such time predominantly for defendants' benefit, he would be entitled to compensation therefor. Central Missouri Tel. Co. v. Conwell, supra. But, in the instant case it was the duty of the plaintiff to keep a look out for fires, guard against theft, etc., and during the time he was asleep it can hardly be said that he was fulfilling his duties or spending his time predominantly for defendants' benefit. Therefore, plaintiff would not be entitled to compensation for time he spent sleeping. (However, whether or not sleeping time is compensable in the instant case makes little difference, since plaintiff was only seen sleeping on a few occasions.)

■■■■ While it is true that plaintiff often came to work before 8:00 p. m., and that defendants knowingly suffered and permitted him to do so, plaintiff failed to establish by a preponderance of the evidence the amount and extent of the overtime he worked before 8:00 p. m. as a matter of just and reasonable inference, and any attempt by the Court to make a finding in this respect would be pure conjecture. Especially is this true in view of the fact that plaintiff often left the job at various times during working hours, often left the job before 4:00 a. m., often did not come to work at all, and sometimes slept on the job. Stated differently, when the hours he worked before 8:00 p. m. are counterbalanced with the hours he took off from work during the period from 8:00 p. m. to 12:00 p. m. and from 1:00 a. m. to 4:00 a. m., the Court cannot determine, without resort to conjecture, that plaintiff worked any more than seven hours a night. But the Court does feel that plaintiff has established

by a preponderance of the evidence that he was employed for at least seven hours a night, seven days a week, and is entitled to recover for overtime compensation. Bloch v. Bell, et al., supra.

 Plaintiff worked 49 hours per week and was paid $37.50 therefor. Thus his regular rate of pay was 76½ cents per hour, which is in excess of the required minimum wage. 29 U.S.C.A. § 206. But, for the 9 hours overtime he worked each week, he was not paid one and one-half times the regular rate, and he is entitled to recover of and from the defendants the sum of 38¼ cents per hour for the overtime he worked. 29 U.S.C.A. § 207. Nine hours at 38¼ cents per hour amounts to $3.44¼ per week which plaintiff was underpaid for 59 weeks, and it follows that plaintiff is entitled to recover from the defendants $203.11 for unpaid overtime compensation.

Plaintiff has asked for an equal amount as liquidated damages, but the Court feels that under the circumstances in this case liquidated damages should not be allowed. In January, 1950, defendants were employing a night watchman under similar conditions as they later employed plaintiff, and were keeping the same type of records on him as they later kept on plaintiff. At that time defendants' mill was investigated by the Wage and Hour Division and defendants were informed that everything was in order. It was not until January, 1952, when another investigation was made, that the defendants learned they were not in compliance with the Fair Labor Standards Act. The fact that defendants kept proper records on all other employees except plaintiff, and the fact that the Wage and Hour Division instituted no proceeding against them for their violation as to plaintiff, are further factors demonstrating the good faith of the defendants in paying plaintiff as they did. The Court is convinced that the defendants had reasonable grounds for believing their actions were in conformity with the Act and that their actions were in good faith, and therefore plaintiff should not recover liquidated damages. 29 U.S.C.A. § 260; F. W. Stock & Sons, Inc., v. Thompson, supra; Anderson v. Avery Corporation, supra.

### Conclusions of Law

**1.**

 The Court has jurisdiction over the parties to and the subject matter of this action.

**2.**

The plaintiff is entitled to recover of and from the defendants the sum of $203.11 for unpaid overtime compensation, a reasonable attorney's fee of $150, and costs of this action.

**3.**

The plaintiff is not entitled to recover liquidated damages.

A judgment in accordance with the above is being entered today.