33 F.3d 55
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joe MYRACLE, James E. Coulter, Willie C. Hamilton, James F.
Cook, Jr., Harry Mclellan, Robert M. Vinson, John T. Fine,
Phillip L. Sinquefield, Willis Ray Brooks, William E. Weir,
Charles R. Duffie, Henry Lewis, Charles E. Henderson, David
R. Rikard, Jimmy Jeu, James J. Fowler, Gordon N. Mcghee,
Warren R. Verble, Dorothy L. Clark, Mary Ann Battle, Don G.
Krajewski, Paul E. Sams, David A. Bradshaw, Charles R.
Houston, Donald K. Roberts, Lloyd A. Smith, Billy J.
Adamson, Rodney W. Kilgore, Alene Highland, James H. Craft,
Wesley H. Harville, Johnny Mcphail, Clarence Bunch, Wayne
Lance, William T. Rhodes, Ernest W. Brimson, Philip J.
Thielen, Jr., Johnnie R. Fine, Malcom L. Smith, Christine R.
Jamerson, James D. Norton, John F. Lever, John W. Minion,
Jr., Carmon W. Luttrell, James E. Garey, Bobby Peel, Jerry
L. Bowien, Virgil L. Baker, Dallas D. Patrick, Clayton B.
Blake, Richard Curtis Ramsey, Sr. on behalf of themselves
and other employees similarly situated, Plaintiffs-Appellants,
v.
GENERAL ELECTRIC COMPANY, Defendant-Appellee.
 No. 92-6716.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1994.
 
 Before: JONES and BATCHELDER, Circuit Judges; and GILMORE, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This action was brought by fifty-seven present and former employees of defendant appellee General Electric Company alleging that General Electric's failure to pay them for their twenty minute meal period violates the provisions of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. Secs. 201-219. The case was tried to the court sitting without a jury and, on December 1, 1992, the district court issued its Findings of Facts and Conclusions of Law, deciding in favor of General Electric. Specifically, the district court concluded that the mechanics are substantially relieved of their duties during their meal breaks and that the unpaid meal period does not constitute "work" within the meaning of the FLSA; therefore, the district court held that the meal period is not compensable under the FLSA. For the reasons that follow, we affirm the district court.
 
 I.
 
 2
 General Electric's Memphis facility manufactures light bulbs, or "lamps" as they are known in the industry, used primarily in the dashboards and turn signals of automobiles. The Memphis plant employs approximately 375 individuals, about 180 of whom are employed in the position of machine or maintenance mechanic. The plaintiffs in this action are fifty-seven present and former employees who are or were employed as maintenance mechanics at the plant.
 
 
 3
 General Electric operates three shifts at the plant twenty-four hours per day five days per week. The first shift operates eight hours and twenty minutes, beginning at 6:50 a.m. and ending at 3:10 p.m.. With the exception of the starting and ending shifts of the week, the second shift operates seven hours and fifty minutes, beginning at 3:10 p.m. and ending at 11:00 p.m.. The third shift also operates seven hours and fifty minutes, beginning at 11:00 p.m. and ending at 6:50 a.m. The weekly start-up of operations at the plant begins at 9:48 p.m. on Sunday and is conducted by the third shift. The weekly shutdown of operations is performed by the Friday evening second shift and ends at 12:12 a.m. Saturday. Within their allotted shift time, the mechanics receive two ten-minute paid breaks and one twenty-minute meal period for which they are not paid.
 
 
 4
 The operations schedule at issue in this case was implemented in 1961 after complaints from third shift employees and after negotiations with the union. Prior to the 1961 schedule change, every shift had a thirty minute unpaid meal period. The first and second shifts worked five days per week, and the third shift worked six days per week. Thus, to eliminate the sixth work day for the third shift, the current schedule was adopted, which included the unpaid twenty minute meal period now at issue. This twenty minute unpaid meal period has remained unchanged and unchallenged since 1961.
 
 
 5
 The plaintiffs in this case are skilled maintenance mechanics responsible for overseeing the operations of complex machinery and have a large amount of discretion in the performance of their duties. Maintenance mechanics are responsible for loading raw materials into their machines, making adjustments to the machines, checking the product coming off the line, repairing machines when necessary, and observing machines operations. In addition to the foregoing, the mechanics are responsible for the quality and quantity of the product that is run off of their machines. The machines operated by the mechanics have warning devices which indicate that defective product is being produced. These devices include flashing lights, bells, and horns.
 
 
 6
 A mechanic's responsibility for product being produced from the machine he operates continues throughout his shift, including the paid breaks and the unpaid meal period. Most of the mechanics use the "buddy system" when it is necessary to be away from their machines. Through this system, a nearby mechanic, or "buddy" will respond to any machine-generated warning signals which occur while the absent mechanic is away from his machine, and the buddy mechanic will make necessary adjustments to the machine, or simply shut the machine down. However, even when a buddy is present, the absent mechanic is at all times responsible for production on his or her machine.
 
 
 7
 Plant rules prohibit the mechanics from eating on the plant floor and from performing their work during the meal period. The mechanics are generally free to choose both the time and location for their meal periods and are not required to clock out. General Electric provides a cafeteria and several break rooms that the mechanics may use during their meal periods. In addition, mechanics are free to leave the plant during their meal periods. On occasion, a problem will develop with a machine while the mechanic is taking his meal break or is absent for another reason; for this reason, some mechanics choose to take their meal periods in the break room closest to their work area so that they may more easily monitor and return quickly to their machines if necessary.
 
 
 8
 In support of their assertion that they are not relieved of their duties during their meal periods, several of the plaintiffs testified that their meal periods are sometimes interrupted by power outages, machine breakdowns, or supervisor inquiries. A plant supervisor confirmed that mechanics are sometimes paged during their meal periods. Obviously, if a machine is shut off during a mechanic's lunch break or if bad product is run, there is a negative effect on the quality or quantity of production. Mechanics are occasionally disciplined for actions detrimental to production. A few of the plaintiffs who testified in the district court had been disciplined for production deficiencies which occurred in part during the unpaid lunch period, and the remainder claimed to be aware that such discipline had occurred.
 
 
 9
 Despite the fact that mechanics occasionally are disciplined, General Electric asserts that discipline for production solely during the meal period is extremely unlikely because of an informal "twenty minute" rule under which an employee is not disciplined for running defective product for twenty minutes or less during a shift. No maintenance mechanic at the Memphis plant has ever been disciplined for bad product run solely during his or her meal period; and, in the three years prior to the filing of this lawsuit, no mechanic received written discipline of any type relating to production.
 
 
 10
 Both parties offered expert witnesses to support their arguments. Plaintiffs' expert, Dr. Joure, surveyed the plaintiffs and, as a result of her survey, gave an opinion that the plaintiffs were not relieved of their duties during their meal break. This opinion was based on the number of times plaintiffs reported being interrupted during their meal breaks, the fact that they were responsible for product made during their meal period, and the apprehension many plaintiffs reported about being away from their machines and about being disciplined for production deficiencies which might occur during their meal periods. Dr. Joure did not survey the 123 mechanics who are not plaintiffs in this case and she did not visit the General Electric plant.
 
 
 11
 Defendant's expert, Dr. Diane Horgan, concluded that the plant mechanics were fully relieved of duty during meal periods. Dr. Horgan visited the plant and observed its operation. She observed mechanics taking their breaks and meal periods, observed the "buddy system" in action, and talked to employees on the floor about the frequency of interruptions and how often they leave their machines for various reasons. Dr. Horgan found that meal time interruptions are rare and do not greatly interfere with employee or plant routine. She also stated that she observed employees taking breaks or meal periods, at times of their own choosing, of considerably longer duration than the ten or twenty minutes permitted. Dr. Horgan also conducted surveys of General Electric employees and discussed aspects of plant operation with certain supervisors.
 
 
 12
 The district court found that the plaintiffs "are relieved of work for the purposes of taking a twenty minute meal break, once each shift, at a time of their own choosing." As a result, the district court found in favor of General Electric. The plaintiffs now appeal alleging numerous errors in the district court's decision, several of which do not need to be dealt with separately. For purposes of this appeal, we frame the plaintiffs' claims as follows: First, the plaintiffs assert that the district court failed to apply properly the "predominant benefits" test to the facts of this case and erred in finding that the plaintiffs were completely relieved of their work duties during their meal period; next, plaintiffs contend that the district court failed to give proper weight to the Department of Labor's Interpretive Bulletins; and finally, that the district court erroneously discounted the opinions and beliefs of the plaintiffs as to what constituted work. For the reasons that follow, we reject all of the plaintiffs' allegations of error and affirm the district court.
 
 II.
 
 13
 The overwhelming majority of the issues presented by the plaintiffs in this appeal concern findings of fact made by the district court; we review those findings for clear error. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 713 (1986) ("the facts necessary to a proper determination of the legal question whether an exemption to the FLSA applies in a particular case should be reviewed by the courts of appeals pursuant to Rule 52(a)...."); Hamblen v. Ware, 526 F.2d 476, 478 (6th Cir.1975); Fed.R.Civ.P. 52(a).
 
 A.
 
 14
 Plaintiffs argue that the twenty minute meal period is compensable because meal periods are frequently interrupted by their duties on the plant floor, because plaintiffs are responsible for both the quality and quantity of the work produced during their meal periods, and because plaintiffs are subject to discipline for problems with their machines while they are taking their meals.
 
 
 15
 Section 207 of the FLSA forbids employers from employing workers for more than 40 hours per week without compensating them for the excess time at a higher rate.[1] Under the FLSA "employ" is defined as "to suffer or permit to work." 29 U.S.C. Sec. 203(g). "Work," however, is not defined in the FLSA and the courts have been left to delineate what it means. The Supreme Court has interpreted the meaning of "work" to be "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Tennessee Coal, Iron & R. Co., v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944). As explained by the Supreme Court in Armour & Co. v. Wantock, 323 U.S. 126 (1944),
 
 
 16
 an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.... Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.
 
 
 17
 Id. at 133.
 
 
 18
 In F.W. Stock & Sons, Inc. v. Thompson, 194 F.2d 493 (6th Cir.1952), the Sixth Circuit first addressed the compensability of meal periods under the FLSA. The court found that the meal period at issue was compensable because the nature of the work required the employees to pay "constant attention" to their machinery and because their meals were often interrupted by emergencies requiring their immediate attention. Id. at 496. The F.W. Stock court held:
 
 
 19
 So it seems to have been proven adequately that the employees did not have a free lunch period during which they could serve their own interest and do as they pleased, but that their duties and responsibilities to their employer were continued during the lunch periods. As the District Judge well said during a colloquy with counsel: "A man who has to oil machinery with a sandwich in his hand is not having a free lunch period."
 
 
 20
 Id.
 
 
 21
 In Hill v. United States, 751 F.2d 810 (6th Cir.1984), cert. denied, 474 U.S. 817 (1985), this Court, relying on F.W. Stock, set out the standard for whether a meal period is compensable under the FLSA. In Hill, a United States Postal Service worker alleged that he was entitled to compensation under the FLSA because he remained responsible and accountable for "accountable items" and undelivered mail over his lunch period. This Court held that the carrier had no right to compensation under the FLSA, reasoning:
 
 
 22
 [a]s long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA.
 
 
 23
 Hill, 751 F.2d at 814.
 
 
 24
 In addition, it is the employee who bears the burden of proving that he or she performs substantial duties and spends his or her meal time predominantly for the employer's benefit. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946) ("employee ... has the burden of proving that he performed work for which he was not properly compensated."); Brock v. Seto, 790 F.2d 1446, 1447-48 (9th Cir.1986), cert. denied, 488 U.S. 1040 (1989); Brock v. Claridge Hotel and Casino, 664 F.Supp. 899, 906 (D.N.J.1986), aff'd 846 F.2d 180 (3rd. Cir.), cert. denied, 488 U.S. 925 (1988); Blain v. General Electric Co., 371 F.Supp. 857, 860 (W.D.Ky.1971); see also Hill, 751 F.2d at 813-15 (6th Cir.1984). Therefore, in order to prevail, the plaintiffs in this case must establish that they are not "substantially relieved" of their duties and that they spend their meal period "predominantly" for their employer's benefit.
 
 
 25
 The district court concluded that the plaintiffs did not satisfy their burden. Specifically, the district court found that maintenance mechanics at this plant eat, rest, smoke, make telephone calls, or go to their vehicles during their meal periods; and, that the mechanics are permitted to leave the plant if they wish to do so. Based on these findings, and the determination that the mechanics are only rarely interrupted during their meal periods, and are permitted to finish their meal period if they are interrupted, the district court concluded that the plaintiffs failed to establish that they perform substantial duties during their meal periods.
 
 
 26
 Plaintiffs allege that the district court misapplied the "predominant benefit" test by not focusing on the benefit General Electric receives from the continuous operation, including through the meal period, of the machines for which the plaintiffs are responsible. According to the plaintiffs, because production does not cease and employees' responsibility for that production does not cease during the meal periods, their time is spent predominantly for the benefit of their employer. We cannot agree with plaintiffs' analysis of this matter. Plaintiffs seek to make the question of whether the employer receives any benefit during the employees' meal breaks the only factor in this analysis, when there is clearly another inquiry that must be made: "Is the employee engaged in the performance of any substantial duties?" The question is not simply whether General Electric receives benefit during the plaintiffs' meal break, for it clearly does; the automated production machines, barring breakdown or emergency, continue to produce lamps whether or not the plaintiffs maintain their vigil. Therefore, in this case, the crucial question is whether plaintiffs are engaging in substantial duties during their meal periods in order to maintain this production. We note that substantial duties need not be more than waiting for something to happen, or "[r]eadiness to serve...." Armour, 323 U.S. at 133. However, after a careful review of the record and the district court's factual findings, we join the district court in determining that, in this case, the plaintiffs are not required to engage in any substantial duties during their meal breaks. Within loose limits, plaintiffs are free to choose the time and place of their meal periods. Further, they are neither required nor allowed to perform their work duties during this time. To the extent that plaintiffs are occasionally interrupted by an emergency or power outage, these interruptions are de minimis and do not render the meal period compensable. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 692 (1946); Hill, 751 F.2d at 815.
 
 
 27
 In this age of ever-increasing automation, the continuous operation of automated production machinery has become the norm. To require an employer to compensate employees for time when, as here, the employees cannot show that they performed any duties, much less substantial ones, during their meal periods, penalizes the employer for maintaining production on a twenty-four basis. So long as the employee receives a sufficient period of time in which to eat his meal undisturbed and unhassled, the dictates of the FLSA are satisfied.
 
 B.
 
 28
 Plaintiffs next assign error to the district court's failure to give the Department of Labor's Interpretive Bulletins more weight. Plaintiffs contend that the Interpretive Bulletin of Hours Worked issued by the Wage-Hour Administrator, 29 C.F.R. Sec. 785.19 (1993), creates a presumption that they must be paid for any meal period of less than thirty minutes. That bulletin provides, in relevant part, that:
 
 
 29
 (a) Bona fide meal periods are not worktime.... The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating....
 
 
 30
 29 C.F.R. Sec. 785.19 (1993). The district court reviewed this bulletin, and noted,
 
 
 31
 [t]his bulletin is helpful to the court in explaining the enforcement policy of the Department of Labor with regard to meal periods. It is not, however, binding or determinative in this action. While the regulations of the Department of Labor, adopted by the Wage-Hour Administrator, may be considered by the court in cases such as the one at bar, they do not represent legal standards which the court is bound to follow.
 
 
 32
 The plaintiffs assert that the district court erred in "completely refusing" to consider the duration of meal period rules set out in the interpretive bulletin. We do not read the record as indicating that the district court refused to consider the guidance of the interpretive bulletin. In its analysis, the district court cited a district court case, Blain v. General Electric Company, 371 F.Supp. 857 (W.D.Ky.1971), which dealt with issues almost identical to those in this case.[2] There, in denying recovery to the plaintiffs for an 18-minute meal period, the court analyzed the relevance of the interpretive bulletin to the plaintiffs' claim and stated:
 
 
 33
 Although Section 785.19 speaks of "special conditions" in evaluating a meal period of less than 30 minutes, this Court does not believe that a shorter meal period shifts the burden of proof from plaintiffs to defendant to demonstrate that there are peculiar or unique circumstances which justify a shorter meal period. All that is required is that the particular facts of each case be examined to determine if the period in question is in fact a bona fide meal period.
 
 
 34
 Id. at 862.
 
 
 35
 The district court, relying in part on the analysis in Blain, concluded that the interpretive bulletin was not binding, and did not shift the burden of proof to defendant. The essence of plaintiffs' argument is that the district court did not accord the interpretive bulletin sufficient deference. Plaintiffs cite a number of cases, see e.g., Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); Mitchell v. Greinetz, 235 F.2d 621 (10th Cir.1956); Brennan v. Elmer's Disposal Serv., Inc., 510 F.2d 84, 88 (9th Cir.1975), all of which stand for the proposition that the Department of Labor's Interpretive Bulletins are to be accorded varying degrees of deference. However, none of these cases hold that a court is legally bound by these bulletins, only that they must be given some deference. After reviewing the relevant case law, we conclude that this traditional approach of according some, but not complete deference is appropriate.
 
 
 36
 In this case, the district court satisfied the appropriate standard of deference. The district court "carefully considered" the bulletin, but determined that "in light of the weight of the evidence offered in this case, there is no basis for finding that the meal period in question is not bona fide under applicable law." Contrary to plaintiffs' assertions, we find that the district court did not "completely refuse" to consider the guidance set forth in the interpretive bulletin.
 
 C.
 
 37
 Plaintiffs next assign error to the district court's finding that the plaintiffs' articulated fears concerning the possibility of discipline for meal-time production deficiencies are subjective and largely unsubstantiated. Plaintiffs assert that the opinions and beliefs of employees are a principal factor in determining what constitutes compensable work. In support of this proposition, the plaintiffs cite to F.W. Stock, supra, and also refer to the testimony of their expert industrial psychologist.
 
 
 38
 In F.W. Stock, the court held that "it has been shown that all these employees were honestly of the opinion that their superior did not desire them to leave the premises during lunch periods, but expected them to eat lunches in the immediate vicinity of their work...." 194 F.2d at 496. However, this statement by the court is clearly not a blanket pronouncement that the subjective opinions of an employee are to be given controlling weight. The circumstances of F.W. Stock differ markedly from those of the case at hand insofar as in F.W. Stock there was a great deal of objective proof supporting the subjective fears of the plaintiffs. As the district court in this case correctly noted, "the factual determination to be made in this case revolves not around the subjective impressions of the parties, but the extent to which Plaintiffs are able to prove that they are not relieved of duties and responsibilities during their unpaid meal periods."
 
 
 39
 Plaintiffs presented proof, through the testimony of several of the plaintiffs, that they are apprehensive about being disciplined for deficiencies in production while they are on their meal breaks. The district court found, however, that the only objective proof to support plaintiffs' claims of apprehension came from plaintiffs Joe Myracle and Charles Houston. Plaintiff Myracle testified that in 1986 he was disciplined by written notice for running 2700 defective lamps, part of which were run during his lunch break. The district court specifically found that it would take at least an hour to run this amount of product. Plaintiff Houston testified that he received a written warning, later reduced to a verbal warning, in 1988 for defective product that he testified was run partly during his meal break.
 
 
 40
 Plaintiffs assert that further objective support for their subjective fears is to be found in the testimony of their expert industrial psychologist, Dr. Sylvia Joure. The district court found that Dr. Joure surveyed only the fifty-seven plaintiffs in this case and did not survey or speak to the other 123 maintenance mechanics employed at the plant. The district court determined that "the weight of Joure's testimony is diminished considerably by the fact that she surveyed only plaintiffs, who naturally feel that they are not relieved during meal periods ... and who would be expected to give answers to her survey favorable to their litigation position."
 
 
 41
 The district court also noted that the opinion of General Electric's expert industrial psychologist was obviously and predictably favorable to General Electric. After thoroughly considering the expert opinions in this case, the district court concluded: "The expert opinion in this case was not particularly helpful. Although both experts are well-qualified in their field, each expert's opinion was predicated on a particular view of the facts, a view that was favorable to the party who retained that expert." After consideration of the expert testimony and the testimony of the plaintiffs, the district court found that the proof indicated that the plaintiffs are generally free to do whatever they choose with their meal periods, and that the preponderance of the evidence showed that interruptions to the plaintiffs' meal periods are rare. Further, the district court found that no maintenance mechanic had ever been disciplined for defective product run solely during a meal period; and that no maintenance mechanic received any form of discipline whatsoever relating to defective product in the last three years. These findings are not clearly erroneous, and it was entirely proper for the district court to determine from the objective facts as found by the court, that the plaintiffs' fears about discipline during meal time were subjective and unsubstantiated.
 
 
 42
 Plaintiffs take special exception to the dismissal of a particular plaintiff, William Weir. Weir testified that his job as a maintenance mechanic was in an area of the plant in which there was no "buddy" or other person to assist him in watching his machine. Weir also testified that he takes his lunch break in the break room closest to his machines because he has no relief person. Plaintiffs assert that Weir is the proverbial "man who has to oil machinery with a sandwich in his hand...." F.W. Stock, 194 F.2d at 496. However, the district court did not agree with this characterization, and neither can we. In the twenty-eight years that Weir has been with General Electric, he has never been disciplined for poor product run during his lunch period. While it can certainly be argued that the reason he has never been disciplined for poor product during his meal period is because he eats where he can hear his machines' alarms, there is not sufficient evidence in the record for this court to hold clearly erroneous the district court's determination that interruptions to meal periods, including Weir's, happen only rarely. It is undisputed that Weir could leave the plant to eat lunch if he chose to do so; and on those occasions when his lunch break was interrupted, he was free to complete the remainder of it. In short, we can find no exceptional circumstances associated with Weir's situation that support a finding that he was not also relieved of any substantial duties during his meal break.
 
 III.
 
 43
 In conclusion, we agree with the district court's determination that the plaintiffs in this case are relieved of any substantial duties during their meal periods; and, are therefore not entitled to compensation under the FLSA for the twenty minute meal period. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 29 U.S.C. Sec. 207(a)(1) provides:
 Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
 
 
 [2]
 Plaintiffs assert that the district court did little more than "parrot" the Blain case in its opinion. We find that this assertion is unfounded. Even a cursory review of the district court's decision reflects that the district court relied on Blain only to the extent that it provided some helpful guidance on the use of the Department of Labor's Interpretive Bulletins. As a result, we reject the plaintiffs' assertion that the district court somehow improperly relied on Blain. In addition, because the plaintiffs' complaints regarding Blain are essentially disagreement with the outcome of that case, and we think Blain was correctly decided, we find plaintiffs' claims with regard to that case without merit