[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14496

_____

D.C. Docket No. 1:16-cv-23170-FAM

ELLIOTT GELBER,
all others similarly situated,
RUBEN YERO,
SIGFREDO HERNANDEZ,
MONICA VILA,
FARA DIAZ,
JORGE AGULAR,
CASSANDRA BAKER,
SYLVIA BATISTA,
SANDRA AMENEIRO,
JEAN VALBRUM,
ANGEL LOPEZ,
CARLOS TOLENTINO,
MAGALIE SANTIAGO,
LUIS PAGAN,
LAREZO MORERA,
RUBEN CATALA,
REY RIJOS,
JENNIFER MACIOLEK,
ALEJANDRO MELO,

Plaintiffs-Appellees,
Cross-Appellants,

versus

AKAL SECURITY, INC.,

Defendant-Appellant,
Cross-Appellee.

————————————————

Appeals from the United States District Court
for the Southern District of Florida

————————————————

(September 30, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

NEWSOM, Circuit Judge:

This is an unusual case. It presents a seemingly straightforward question: Under the Fair Labor Standards Act, may an employer automatically deduct one-hour meal periods from its employees' otherwise compensable overtime? As we will explain, given the peculiar way in which this particular case has been litigated, the answer here is no. We therefore affirm the district court's decision.

**I**

Akal Security is a government contractor that repatriates persons ordered removed from the United States. It transports detainees on airplanes—both domestically, from one holding facility to another, and internationally, from the United States to the detainees' home countries. To ensure the safety of its flights, Akal staffs them with air security officers (ASOs).

2

Once the detainees have been transported to their respective destinations, the ASOs are required to return to the United States—here, to Miami—aboard the same aircraft. Because these return flights—"Empty Return Legs"—carry no detainees, the ASOs have few affirmative duties during them. Accordingly, they can sleep, meditate, play video games, or watch TV on their flights home. On arrival in Miami, the ASOs have to unload and clean the plane and perform other minor administrative duties to prepare for the following day.

Importantly here, Akal acknowledges that under the Fair Labor Standards Act, it has to pay its ASOs for overtime spent on the Empty Return Legs, and it generally does so. *See* Br. of Appellant at 31; Reply Br. of Appellant at 13; Oral Arg. Tr. 7:40–8:07. But for Empty Return Legs lasting longer than 90 minutes, Akal has a different policy. For those flights, Akal automatically deducts one hour from each shift as a "meal period." In relevant part, Akal's policy states: "There is a mandatory un-paid 1 hour meal period on each shift. This meal period will be taken by all ASOs and Leads on the return leg of each mission." The policy instructs ASOs to disengage from work duties during those "meal period[s]" and to use their time as they wish. Here, Akal didn't record actual meal periods, but instead, simply subtracted one hour from each ASO's timesheet.

Elliot Gelber and other ASOs sued Akal under the FLSA for unpaid wages. The district court granted summary judgment to Gelber, holding that Akal's

3

automatic "meal period" deductions violated the Act. Then, following a bench trial, the court found that Akal had acted in good faith and hadn't willfully violated the FLSA.

The principal question presented on appeal is whether Akal was entitled to make the challenged meal-period deductions from otherwise compensable work. We hold that it was not and that, in doing so, Akal violated the FLSA. We must also decide whether the district court correctly found that Akal acted in good faith and not willfully. We conclude that it did.

## II

The FLSA requires employers to pay overtime wages to employees for all "hours worked" over 40 per week. *See* 29 U.S.C. § 207. To determine, as a general matter, whether the employee's time constitutes "work[]" within the meaning of § 207, the Supreme Court adopted what has since been dubbed the "predominant-benefit test": Time spent at the employer's behest is "work" when it is "predominantly for the employer's benefit." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). The Department of Labor has also promulgated implementing regulations, *see generally* 29 C.F.R. § 785, that provide guidance in interpreting and applying the term "hours worked" in specific situations—

including, as relevant here, meal breaks.[1]  Specifically, 29 C.F.R. § 785.19 sets forth the Department's views about whether meal breaks are "bona fide" and, thus, whether they constitute compensable work.  It states that an employee "must be *completely relieved from duty* for the purposes of eating regular meals" and, further, that the employee "is not relieved if he is required to perform any duties, whether active or inactive, while eating."  29 C.F.R. § 785.19 (emphasis added).  This Court has "adopted the exclusion standards of § 785.19 as an appropriate statement of the law."  *Kohlheim v. Glynn Cnty.*, 915 F.2d 1473, 1477 n.20 (11th Cir. 1990).

Although these principles are easily stated, two difficult issues arise in this case, both critical to its resolution.  First, who bears the burden of proof?  Must Gelber and the ASOs show that they were in fact performing "work[]" during meal periods, or must Akal instead show that it is entitled to *exclude* a meal period from compensable time?  Second, what standard does § 785.19 embody, according to our prior panel precedent in *Kohlheim*?  For reasons we will explain, we answer those questions—at least as they present themselves in this case—as follows:  (1)

---

[1] These regulations are entitled to *Skidmore* deference—that is, the deference owed to the Department of Labor based on its "body of experience and informed judgment."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Akal bore the burden (2) to show that the ASOs were "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19.[2]

## A

Begin with the burden. Ordinarily, a party seeking overtime pay has the burden of "proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). Given that § 785.19 interprets the phrase "hours worked" in § 207—and given that whether a meal break is compensable depends on whether it was "work[]" in the first place—it arguably follows that the employee should bear the burden to show that he was working during a meal period. But unlike the typical case of unpaid overtime, which might involve, say, record-keeping, *see, e.g.*, *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801–02 (11th Cir. 2015), a meal break takes place within a period of time already deemed compensable and, therefore, feels more like an *exception* to the requirement of overtime pay. In other words, it's a carveout from an employee's workday.

These two competing rationales have led the courts of appeals to divide over the burden-of-proof question in meal-break cases. *Compare Hertz v. Woodbury Cnty.*, 566 F.3d 775, 783–84 (8th Cir. 2009) ("Mealtimes . . . are not exempt from

---

[2] We review *de novo* a district court's order granting summary judgment, viewing all evidence in favor of the nonmoving party. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

compensation, but rather they are not compensable in the first instance."), *and Myracle v. Gen. Elec. Co.*, 33 F.3d 55 (6th Cir. 1994) (unpublished table opinion) (similar), *with Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 265 (5th Cir. 1998) ("The employer bears the burden to show that meal time qualifies for this [meal time] exception from compensation."), *and Roy v. Cnty. of Lexington*, 141 F.3d 533, 544 (4th Cir. 1998) (similar).  Although this Court has addressed meal periods under the FLSA, we have never squarely decided who bears the burden of proof.  For reasons we will explain, we hold that a burden-shifting scheme applies in meal-break cases and that, once an employee satisfies his burden by showing that his logged work hours are generally compensable, the employer bears the burden of proving that the carved-out meal periods were bona fide.  In the particular circumstances of this case, Akal bore the burden to show that it was entitled to automatically deduct an hour from the ASOs' overtime pay.[3]

Our conclusion follows from the Supreme Court's decision in *Anderson*. There, employees of a pottery plant sued the plant for undercompensating them.

---

[3] Although we agree with the Fourth and Fifth Circuits' conclusion, we get there by a slightly different route.  Those courts seem to compare meal-break exclusions to "[e]xemptions," 29 U.S.C. § 213, from the FLSA's overtime requirements.  For exemptions under § 213, an employer "bears the burden of proving the applicability of a FLSA exception by clear and affirmative evidence."  *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001) (quotation marks omitted).  We agree that a meal break is logically akin to an exemption, but it's not clear to us that the Fourth and Fifth Circuits' reasoning follows as an interpretive matter: Meal breaks aren't mentioned as an "exemption" under § 213, but rather in a regulation, 29 C.F.R. § 785.19, interpreting the phrase "hours worked" in 29 U.S.C. § 207.

328 U.S. at 682. The employees were required to punch in and out at the beginning and end of each shift. *Id.* at 682–83. But rather than compensate the employees for all of the time logged on their cards, the plant counted working time from the "succeeding even quarter hour after employees punch in" to the "quarter hour immediately preceding the time when they punch out." *Id.* at 683. Thus, an employee who punched in at 6:46 a.m. and out at 12:14 p.m. was paid only for work from 7:00 a.m. to 12:00 p.m., rather than, as the employees believed was proper, for the entire period. *Id.* at 683–84. In reversing a judgment for the employers, the Supreme Court held that the employees could be awarded for the entire duration—even though they couldn't show that they were always and necessarily doing "productive work" when they were punched in. *Id.* at 686–88, 693. The Court explained that once an employee has shown that "he has in fact performed work for which he was improperly compensated," the "burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 686–87.

The issue of automatic deductions for meal periods in many ways resembles the record-keeping situation in *Anderson*, and we apply *Anderson*'s burden-shifting rule here. In *Anderson*, the Court concluded that the employees had shown that their "preliminary activities after arriving at their places of work" had to be

8

"included within [their] compensable workweek." *Id.* at 692–93. Accordingly, the Court held that the burden shifted to the employer to show that its automatic quarter-hour deductions were justified. *Id.* at 693. In the same way, in meal-period cases, the employee bears the initial burden to show that the meal period constituted work. If the employee does so, and the employer seeks an automatic deduction, *Anderson* teaches that it's up to the employer to show how much it is entitled to deduct. *See id.*; *see also Harp v. Starline Tours of Hollywood, Inc.*, No. 14-cv-7704, 2015 WL 4589736, at *6–7 (C.D. Cal. July 27, 2015) (citing Department of Labor guidance explaining that an automatic pay deduction for lunch "does not violate the FLSA so long as the employer accurately records actual hours worked, including any work performed during the lunch period").

In the circumstances here, we hold that Gelber has satisfied his initial burden to show that he and the other ASOs performed work for which they were inadequately compensated—strangely, not because of any affirmative proof that he has adduced but, rather, because of the way that Akal has litigated this case. Akal acknowledges—and the parties therefore agree—that idle time spent on the Empty Return Leg is compensable travel time. Under 29 C.F.R. § 785.41, "[a]ny work which an employee is required to perform while traveling must . . . be counted as hours worked," and as Akal acknowledges in its brief, "[t]ravel time is not—and never was—the issue in this case," Br. of Appellant at 31; *see also* Reply Br. of

9

Appellant at 13; Oral Arg. Tr. 7:40–8:07. Consistent with that position, Akal emphasizes that it paid its ASOs, except for the meal periods, "for the entirety of the Empty Return Legs." Br. of Appellant at 31.[4]

Although it acknowledges that idle time on Empty Return Legs is compensable work, Akal insists that the ASOs' general—which is to say idle—status on those segments is irrelevant. The pertinent inquiry, Akal contends, "is whether Plaintiffs had one-hour of time during the Empty Return Legs in which

---

[4] For what it's worth, Akal's concession that the Empty Return Legs constitute compensable work may or may not be correct. The Empty Return Leg is arguably compensable because the entire trip "predominantly . . . benefit[s]" Akal within the meaning of the Supreme Court's decision in *Armour*, 323 U.S. at 133. As Gelber explains it, the ASOs have been "engaged to wait" until they land in Miami, where they are required to return and where they have duties on the tarmac, such as unpacking, cleaning, and preparing for the next day's flights. That conclusion also coheres with the Department of Labor's travel regulations, which provide that "travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." 29 C.F.R. § 785.38. For instance, "[i]f an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time." *Id.* This case is analogous, the argument goes, because the ASOs have to travel to the relevant destination, then return to the employer's premises at the Miami airport—meaning that all of that time is working time. *See also id.* § 785.39 ("Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties . . . ."); *id.* § 785.41.

Oddly, although Akal disavows any challenge to the compensability of the Empty Return Leg as a general matter, it in fact denies both that the ASOs are "engaged to wait" and that their time on the flight constitutes travel time. With respect to waiting time, Akal says that Gelber waived the argument and that, in any event, waiting time is only work if it is integral and indispensable to the job that the employee was employed to perform. Here, Akal says, the ASOs' duties were not principally to wait, but rather to provide security services on flights. With respect to travel, Akal contends that the time the ASOs spent on the Empty Return Legs doesn't constitute "travel time" because travel under the relevant regulations involves movement from one job site to another, but here, the airplane itself is the job site.

All of that, though, is neither here nor there for our purposes. In the end, Akal expressly admits that the Empty Return Leg is generally compensable—which, as explained in text, means that Gelber has satisfied his initial burden.

10

they were 'completely relieved from duty.'" Reply Br. of Appellant at 33. But that's not right. Consider what it means if, as Akal seems to recognize here, the Empty Return Legs are indeed generally compensable: It means that idle time spent on the plane *is* compensable overtime work that *is* spent predominantly for Akal's benefit. *Cf. Armour*, 323 U.S. at 133 (holding that work is compensable if it is "predominantly for the employer's benefit" and noting that "an employer, if he chooses, may hire a man to do nothing"). It follows, then, that the meal breaks must also be compensable—because, so far as we can tell, nothing distinguishes the "meal breaks" from other idle—but compensable—time on the flight. Given that Akal admits that idle time on the flights was compensable, Gelber has discharged his initial burden to show that the meal breaks—also idle time—were compensable, and the burden thus shifts to Akal to prove otherwise. To show that it can exclude one-hour meal breaks, Akal must point to something *other than* the fact that the ASOs were idle on the flights.

Akal never does so. To the contrary, it merely—and repeatedly—hammers the point that the ASOs had idle time *throughout the Empty Return Legs. See, e.g.*, Br. of Appellant at 1 ("Plaintiffs do not genuinely dispute that they had no duties during *at least* one hour of each such flight . . . ." (emphasis added)); *id.* at 2 ("Plaintiffs retained few, if any, duties on the Empty Return Legs and . . . Plaintiffs had *at least* one hour of free time . . . ." (emphasis added)); *id.* at 8 ("There were

11

minimal duties that Plaintiffs may have performed on the Empty Return Legs; and, if any Plaintiffs had such duties, it took at most three out of the twelve ASOs on board the airplane ten to twenty minutes to complete those duties."); *id.* at 9 ("Plaintiffs typically enjoyed *at least* one hour and forty minutes of time during which they had no affirmative work duties." (emphasis added)); *see also id.* at 13, 22–26, 37, 38, 44 (same).  And Akal emphasizes that the ASOs could sleep, meditate, watch movies, or do whatever else they wanted on the flight.  *Id.* at 13.  But Akal's argument proves too much—namely, that *the entire Empty Return Leg* isn't compensable, a conclusion that Akal expressly disavows, in both word (*see* Br. of Appellant at 31, Reply Br. of Appellant at 13) and deed (by paying the ASOs overtime for all other time spent on the flights).

To emphasize the point:  Under Akal's position—that it should prevail here because the ASOs were idle during the supposed meal breaks—why would *any* part of the Empty Return Legs be compensable?  And what would prevent Akal from simply increasing the duration of the "meal period" from an hour to two, three, or four hours?[5]  Akal's argument, it seems, would require us to accept two

---

[5] In ruling for Akal in a similar case, the Fifth Circuit recognized this problem, but it offered no solution, other than to stipulate it away.  *See Dean v. Akal Sec., Inc.*, 3 F.4th 137, 146 n.7 (5th Cir. 2021) ("Certainly, a mandatory, noncompensable meal period cannot be unreasonably long.  One hour in these circumstances was a reasonable amount of time.  We do not further analyze the length of a valid meal break.").

contradictory conclusions that can't both be true—the Empty Return Leg simultaneously *is* and *is not* work.

The contradiction at the heart of Akal's position results, we think, from a foundational error: Akal believes that it is Gelber's burden to show that the meal breaks *were not* bona fide, rather than its own burden to show that they *were*. Akal would thus have us artificially limit our analysis to fixed timepoints within the return flight and ask whether there was "at least" one hour during which the ASOs were relieved from the ordinary responsibilities of supervising detainees. *See* Br. of Appellant at 1, 2, 8, 9, 22–26, 37, 38, 44. But that analysis proceeds from the wrong premise. Rather than assume that the Empty Return Leg is work, Akal impliedly asks us to assume that it isn't. That assumption runs contrary to its own admission that idle time spent on the flight *is* compensable work.

Of course, none of this is to say that an employer could *never* deduct a bona fide meal period during travel. Indeed, other Department of Labor guidance indicates that bona fide meal periods *can* be taken during travel. *See* 29 C.F.R. § 785.41 ("An employee who drives a truck, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, *except during bona fide meal periods* . . . ." (emphasis added)). But, as already explained, the burden is on the employer to prove the bona fides—in particular, as the Department's guidance specifically addressing meal periods

13

explains, by demonstrating that the employee was "completely relieved from duty for the purposes of eating regular meals," 29 C.F.R. § 785.19. Because the driver, pilot, or assistant mentioned in the guidance has affirmative duties, the employer can demonstrate a bona fide meal break by showing that something different happens during the meal period—specifically, disengagement from those affirmative duties. But in the unique circumstances of this case—and consistent with Akal's concession—the mere fact of waiting (or travelling) *is* work. So Akal can't rely on that fact itself to show that the ASOs were *not* working.

In sum, Akal hasn't carried its burden to show that it is entitled to exclude a bona fide meal period from otherwise compensable work. Accordingly, the district court correctly concluded that the ASOs were entitled to compensation for their "meal break" periods on the Empty Return Legs.

**B**

Our meal-breaks caselaw confirms our conclusion. We first confronted the question whether an employer may deduct meal breaks from an employee's overtime pay in *Kohlheim*. There, firefighters sued the county, alleging that it had unlawfully deducted mealtimes from their overtime pay. 915 F.2d at 1474. We agreed. In doing so, we adopted the Department of Labor's guidance regarding meal breaks in § 785.19, which, as we explained there, "require[s] complete relief from duty." *Id.* at 1477. In explaining this completely-relieved-from-duty test, we

14

said, "the essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal." *Id.* We concluded that "the firefighters were not completely relieved of their duties during mealtimes" because they were "subject to emergency calls." *Id. Kohlheim* appeared, then, to adopt the completely-relieved-from-duty test for meal periods.

Admittedly, *Kohlheim* is open to another reading. In a footnote, *Kohlheim* stated that "what matters in meal period cases is whether the employees are subject to real limitations on their personal freedom which inure to the benefit of their employer." *Id*. at 1477 n.19. And *Kohlheim* appeared to apply this test too. The panel there noted that the limitations on the firefighters' freedom—remaining subject to emergency calls—"inure[d] to the benefit of the county" because they ensured "an available pool of competent firefighters for immediate response to emergency situations." *Id.* Arguably, then, as the dissent states in a footnote, *Kohlheim* adopted a "real limitations" test that, the dissent says, is "likely just '[a] version of the predominant benefit test'"—which, recall, governs the general question whether time spent is compensable work. *See* Dissenting Op. at 32 n. 9 (quoting *Babcock v. Butler Cnty.*, 806 F.3d 153, 156 (3d Cir. 2015)).

Given *Kohlheim*'s mixed signals, it's no surprise that there is disagreement over what it means. *Compare Dean v. Akal Sec., Inc.*, 3 F.4th 137, 143 (5th Cir.

15

2021) (noting that our Circuit, rather than applying the predominant-benefit test, "may review" the compensability of meal periods "under a heightened standard"), *with Babcock*, 806 F.3d at 156 (noting that *Kohlheim* applied a version of the predominant-benefit test).

Although *Kohlheim* can be confusing, we think it's best read to adopt the completely-relieved-from-duty test.[6]  First, we emphasized in *Kohlheim* that the Department of Labor's regulations should be given great weight and, indeed, expressly stated that we "join[ed] the other circuits which have adopted the mealtime exclusion standards of § 785.19 as an appropriate statement of the law." 915 F.2d at 1477 n.20.  And by its plain terms, § 785.19 sets out the completely-relieved-from-duty standard, *not* the predominant-benefit standard; it says that the existence of *any duties*—"whether active or inactive"—renders a meal period not "bona fide."  The regulation also contains the express limitation that the relief from duty must be "for the purposes of eating regular meals."  Compare those strict, per se rules with the Supreme Court's articulation of the context-intensive predominant-benefit test:  "Whether time is spent predominantly for the

---

[6] To be clear, our reading of *Kohlheim* doesn't render its "real limitations" language meaningless.  As we see it, when "employees are subject to real limitations on their personal freedom which inure to the benefit of their employer," then the employees are not in fact "completely relieved of their duties." *Kohlheim*, 915 F.2d at 1477 & n.19.  The guiding principle in meal-period cases is thus § 785.19's completely-relieved-from-duty test.

16

employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Armour*, 323 U.S. at 133.

Second, our subsequent decision in *Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir. 1994), clarifies *Kohlheim*'s meaning. In *Avery*, we discussed § 785.19 while interpreting a different regulation, 29 C.F.R. § 553.223(b). Section 553.223(b), which governs meal-time exclusions for certain law-enforcement personnel, specifically mentions and uses the same language as § 785.19. It provides that some public agencies may, "in the case of law enforcement personnel, exclude meal time from hours worked on tours of duty of 24 hours or less, provided that the employee is completely relieved from duty during the meal period, and all the other tests in § 785.19 of this title are met." Despite this language, we held in *Avery* that § 553.223(b) codifies the predominant-benefit test. 24 F.3d at 1345–47.[7] Critically, we reasoned that it would be "superfluous if [§ 553.223(b)] did nothing more than reiterate the standard announced in section 785.19(a)"—which, we explained, "establish[ed] complete relief from duty as the applicable standard." *Id.* at 1345. Thus, under our prior panel precedent, it seems that § 785.19, and thus *Kohlheim*, *must* have adopted a standard other than the

---

[7] The dissent relies, in part, on *Avery* to support its conclusion that the meal periods here were bona fide. *See* Dissenting Op. at 32, 40 n. 16. That reliance seems misplaced given that *Avery* expressly adopts a different test under § 553.223(b) from that in § 785.19. *See Avery*, 24 F.3d at 1345.

predominant-benefit test of § 553.223(b)—namely, the completely-relieved-from-duty standard.[8]

The ASOs were not completely relieved from duty here.  Again, § 785.19 says (with our emphasis) that the existence of "*any* duties, whether active or *inactive*" indicates that the meal period is not bona fide.[9]  Here, the ASOs were engaged in inactive duty—waiting until they arrived home to carry out administrative tasks—and so were not completely relieved "for the purpose of eating a regular meal."

## III

There is one last issue—or two, really.  In his cross-appeal, Gelber contends that the district court erred by holding that Akal acted in good faith and that Akal's violation of the FLSA wasn't willful.  We disagree.[10]

---

[8] To be sure, *Avery* characterized *Kohlheim* as applying a "real limitations" test.  *Avery*, 24 F.3d at 1346.  But as we've already explained, that is the same as the completely-relieved-from-duty test.  *See supra* note 7.  And again, *Avery* itself said that *Kohlheim* "construed section 785.19(a)," which "establish[ed] complete relief from duty as the applicable standard."  *Id.* at 1345.

[9] As other circuits have recognized—in the course of rejecting it—the completely-relieved-from-duty standard can be difficult for employers to satisfy.  For instance, the Eighth Circuit noted that it would seem to require "that an employer . . . compensate employees for all meal periods in which the employee is relieved of all duties except simply remaining on-call to respond to emergencies."  *Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 534 (8th Cir. 1993); *see also Roy v. Cnty. of Lexington*, 141 F.3d 533, 545 n.5 (4th Cir. 1998).

[10] Following a bench trial, we review *de novo* a district court's conclusions of law and review its factual findings for clear error.  *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015).  We review a "district court's ultimate decision to award liquidated damages" under the FLSA for abuse of discretion.  *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008).

18

**A**

The issues of good faith and willfulness affect, respectively, the availability of liquidated damages and the relevant statute of limitations.  We start with good faith.  Under the FLSA, liquidated damages are presumptively available.  An employer who violates the overtime pay requirement, 29 U.S.C. § 207, "shall be liable to the employee . . . affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  But if an employer in an FLSA action shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Act], the court may, in its sound discretion, award no liquidated damages."  29 U.S.C. § 260.  The employer has the burden of "establishing both the subjective and objective components of that good faith defense against liquidated damages."  *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008).

Before the district court, Akal asserted the good-faith defense.  The district court held a bench trial and heard from witnesses whose testimony bore directly on that issue.  Most importantly, Akal's outside counsel testified that a company executive sought his advice regarding the meal-breaks policy and that he advised Akal that the policy comported with the FLSA.  Based on this testimony, the court

19

concluded that Akal acted in good faith on the advice of counsel. After careful review, we find no clear error in that conclusion.

Nor do we find Akal's lawyer's advice objectively unreasonable. Although we have concluded today that Akal's deductions violate the FLSA, this Court had never before addressed a similar question. And as we have explained, our caselaw had not clearly settled either the allocation of burdens or the standard for judging the compensability of meal breaks. The district court did not abuse its discretion in refusing to award liquidated damages.

**B**

Turning to the issue of willfulness, there is ordinarily a two-year statute of limitations for actions seeking unpaid overtime compensation under the FLSA. *See* 29 U.S.C. § 255(a). For "a cause of action arising out of a willful violation," however, there is a three-year statute of limitations. *Id.* Accordingly, if the employer willfully violates the FLSA, the employees can recover an additional year of overtime compensation. "To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez*, 515 F.3d at 1162–63. An employer acts with reckless disregard if it

20

"fail[s] to make adequate inquiry into whether conduct is in compliance with the Act." *Id.* at 1163 (quoting 5 C.F.R. § 551.104).

We see no clear error in the district court's finding that Akal did not willfully violate the FLSA. There is nothing in the record indicating Akal knew that the FLSA prohibited its conduct. Although Gelber points to Akal's settlement of a different lawsuit involving a similar meal-period policy, a lawsuit and subsequent settlement do not alone suffice to show Akal knew that its conduct was prohibited. And even if it was sufficient, because the other lawsuit involved a different meal-period policy, we can't say Akal knew that *this* meal-period policy was prohibited. While reckless disregard can also be sufficient to show willfulness, Akal didn't "fail[] to make adequate inquiry" into whether its conduct was in compliance with the FLSA. *Id.* To the contrary, as already explained, one of Akal's company executives sought outside counsel's advice regarding whether the meal-period policy complied with the FLSA.

* * *

At first blush, it may seem strange to conclude that Akal has to pay its employees who "sleep[], eat[] meals . . . , read[], watch[] movies on their iPads and other tablets, play[] video games, and engag[e] in other leisure activities of their choice" on flights home. But Akal admits that it does so already—just not for so-called "meal periods." That admission proves critical. Akal has not carried its

21

burden to show that the purported "meal periods" were distinguishable from other compensable time on the flight, and thus that it could deduct these periods from the ASOs' overtime pay. The district court thus correctly concluded that by automatically deducting the ASOs' meal periods, Akal violated the FLSA. The district court also correctly concluded, though, that Akal acted in good faith and did not willfully violate the FLSA.

**AFFIRMED**.

BRANCH, Circuit Judge, dissenting:

During certain flights (called Empty Return Legs) that last more than 90 minutes, Akal Security, Inc. allows the Air Security Officers (ASOs) it employs to sleep, eat meals, read, watch movies on their iPads and other tablets, play video games, and engage in other leisure activities of their choice. Apart from 10–15 minutes of small tasks, Akal does not impose any work duties on the ASOs during those flights. Under the Department of Labor's advisory interpretations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, the time the ASOs spend traveling on the Empty Return Legs is compensable work "except during bona fide meal periods." 29 C.F.R. § 785.41. Accordingly, Akal is required to—and does—pay the ASOs for the Empty Return Legs, except for an unpaid one-hour meal period.

Despite the plain language of 29 C.F.R. § 785.41—which states that an employee is not working while riding an airplane "during bona fide meal periods"—the majority holds that Akal violated the FLSA by failing to pay the ASOs for these unworked one-hour meal periods. In effect, the majority holds that an employee is *always* working while riding an airplane and that a bona fide meal period can *never* take place during travel time.[1] This erroneous conclusion

---

[1] Although the majority qualifies its opinion and says that it does not hold "that an employer could *never* deduct a bona fide meal period during travel," this qualification rings hollow and is undermined by the rest of the majority's opinion.

23

contravenes both 29 C.F.R. § 785.41 and the Supreme Court's interpretation of the

FLSA in *Armour & Co. v. Wantock*, 323 U.S. 126 (1944). It also creates a circuit

split with the Fifth Circuit, which held that Akal did not violate the FLSA by

failing to pay ASOs for Empty Return Leg meal periods in a separate case. *See*

*Dean v. Akal Sec. Inc.*, 3 F.4th 137 (5th Cir. 2021).[2] I respectfully dissent.

I.    Background

A.    Facts

Akal "provides air security services in connection with transporting

detainees . . . internationally from the United States to the detainees' home

countries to which they are being deported." The plaintiffs here—Elliott Gelber

and a class of Miami-based ASOs[3]—worked for Akal and were responsible for

"maintain[ing] safety while the detainees [were] being loaded on and off the plane

and while the plane [was] in flight; and . . . tend[ing] to the fundamental needs of

the detainees while they [were] transported on the flights (*e.g.*, bathroom breaks,

feeding, medicine)."

After returning detainees to their home countries, the ASOs were required to

return to Miami aboard the plane. The parties dispute whether Akal was required

---

[2] The Ninth Circuit reached the same result as did the Fifth Circuit, albeit in an unpublished case. *Alonzo v. Akal Sec., Inc.*, 807 F. App'x 718 (9th Cir. 2020).

[3] For convenience, I will refer to Gelber and the ASOs collectively as "Gelber."

24

to pay the ASOs for one-hour meal periods during the Empty Return Legs. The Empty Return Legs (1) were the last flight legs of the day back to Miami, Florida, (2) where there were no detainees on board, and (3) where the flight legs were at least ninety minutes long. During these flights, the ASOs were required to remain in uniform and comply with Akal policies. The ASOs would also sometimes be required to perform small tasks or training, or complete paperwork. These tasks would normally last 10–15 minutes, leaving at least 60 minutes for the ASOs to use for their own purposes. Because the Empty Return Legs averaged two to two-and-one-half hours in duration, the ASOs typically had at least one hour and forty minutes during which they had no affirmative work duties.

Gelber does not dispute that the ASOs were able to use much of their time on the Empty Return Legs for their own purposes, "such as sleeping, eating meals (some warmed up in the aircraft ovens), reading, watching movies on their iPads and other tablets, playing video games, and engaging in other leisure activities of their choice." However, he notes that the conditions on the plane were sometimes "not sanitary" because detainees defecated, urinated, and vomited on themselves on the outbound flight, preventing the ASOs from eating. And, after returning to Miami, he emphasizes, the ASOs were required to unload equipment from the airplane.

25

After each trip, Akal required the ASOs to sign time sheets with the time for meal breaks left blank for a supervisor to complete. A supervisor would later fill in a time for a meal period without regard for when a meal period actually occurred.

Akal's timekeeping policy provides for an unpaid one-hour meal period on Empty Return Legs, stating in relevant part:

**7.0 POLICY FOR UNPAID MEAL PERIODS ON ICE AIR TRANSPORT WORK (CSI SUBCONTRACT) FOR AVIATION SECURITY OFFICERS AND LEADS.**

There is a mandatory un-paid 1 hour meal period on each shift.

This meal period will be taken by all ASOs and Leads on the return leg of each mission. Exceptions to this rule are the following:

- A mission on which there are detainees on-board for the return leg of the trip; there will be no un-paid meal period and ASOs will be paid for the entire mission.
- If the return leg of a mission is shorter than 90 minutes, there will be no un-paid meal period and ASOs will be paid for the entire mission.

The 'return leg' is defined as the last leg of the mission prior to arriving at the point of origin during which there are no detainees on board and no security duties are required. During this un-paid meal period, ASOs and Leads will be expected to disengage from work duties and may use their time as they wish.[4] As this meal period will be taken in the workplace, professional conduct must be maintained and any violations of company policy will not be tolerated.

---

[4] Although the ASOs sometimes were required to perform small tasks during the Empty Return Legs, Akal's deductions for the Empty Return Leg meal periods did not cover time when the ASOs were performing these tasks.

Gelber does not dispute that the ASOs read, understood, and acknowledged receipt of the Timekeeping Policy. Nor does he dispute that each ASO signed an "Employee Offer Letter" at the beginning of their employment that set out the meal period policy.

B.    Procedural History

In 2016, Gelber sued Akal for unpaid minimum wage and unpaid overtime under the FLSA and moved to certify a nationwide class of ASOs. The district court granted the motion for certification in part and denied it in part, certifying a class of only Miami-based ASOs.

After discovery, each party moved for summary judgment. The district court granted Akal's motion for summary judgment on Gelber's claims for unpaid minimum wage but permitted Gelber's claim for unpaid overtime to proceed to trial. At trial, the district court informed the parties that it could not identify any disputed facts as to Gelber's claim for unpaid overtime and that it would decide the question of the compensability of the meal periods based on the undisputed facts. The parties then agreed to waive trial by jury for the question of whether Akal willfully violated the FLSA.

The district court held a bench trial on the issues of willfulness and good faith. At the end of the trial, the district court found that Akal acted in good faith and did not willfully violate the FLSA. It then stated that because of "the

27

uniqueness of the job as a[n] air security officer, even in return flights . . . as a matter of law . . . the plaintiffs must be compensated for the one-hour meal breaks that were automatically deducted."

Following the trial, the district court entered a written order "granting reconsideration of summary judgment" and ruling that "there was no bona fide meal break for the Air Security Officers on the return empty legs of their work flights and that Plaintiffs are entitled to compensation for their travel time" under *Kohlheim v. Glynn County*, 915 F.2d 1473 (11th Cir. 1990), and 29 C.F.R. § 785.19—the Department of Labor's meal period guidance. "Specifically, the Court found the undisputed evidence showed that the Air Security Officers were not 'relieved of work for the purpose of eating a regularly scheduled meal.'" Akal timely appealed.[5]

## II.    Discussion[6]

Akal argues that the district court erred in concluding that the Empty Return Leg meal periods were compensable hours worked under *Kohlheim* and 29 C.F.R. § 785.19. Akal asserts that "the undisputed record establishes that: (1) [the ASOs]

---

[5] Gelber cross-appealed the district court's findings that Akal did not willfully violate the FLSA and that it was entitled to a good faith defense. Because I conclude that Akal did not violate the FLSA, the issue of its willfulness is immaterial, and I would dismiss Gelber's cross-appeal.

[6] We review the district court's order granting summary judgment *de novo*. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).

retained no 'significant affirmative responsibilities' during the one-hour meal periods; and (2) any real limitations on [the ASOs'] personal freedom during the one-hour meal periods *did not* inure to the benefit of Akal."  Gelber responds that the meal periods were compensable worktime and notes that "the ASOs have duties at the end of the mission when the plane lands at MIA . . . [and that] the aircraft that comprises the primary workplace . . . does not contain a separated area for meal breaks."  He also argues that the Department of Labor's recordkeeping guidance undermines Akal's claims that the Empty Return Leg meal periods were not compensable hours worked.

Under the FLSA, Gelber has the burden "of proving that he performed work for which he was not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013).  Although the FLSA requires that covered employers pay the minimum wage or overtime pay for each hour that an employee works, *see* 29 U.S.C. §§ 206–07; 29 C.F.R § 785.5, it does not define "work."[7] We therefore must rely on a mix of administrative guidance and court decisions to determine whether the Empty Return Leg meal periods were "work" for which the ASOs were entitled to compensation.

---

[7] The FLSA defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g).  It further defines "hours worked" to exclude "any time spent in changing clothes or washing at the beginning or end of each workday."  *Id*. § 203(o); *see* 29 C.F.R. § 785.6.

The Supreme Court originally defined "work" in the FLSA context to mean "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). It later clarified the "exertion" requirement, noting that "an employer, if he chooses, may hire a man to do nothing." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). Accordingly, the key test remains "[w]hether time is spent predominantly for the employer's benefit or for the employee's," which "is a question dependent upon all the circumstances of the case." *Id.* But this test does not specifically resolve the question of whether the Empty Return Leg meal periods were compensable "work."

The Department of Labor administers the FLSA and has promulgated advisory interpretations of the statute that aid our analysis.[8] *See* 29 C.F.R.

---

[8] To be precise, the Department of Labor's advisory interpretations are "interpretive rules." *See* Attorney General's Manual on the Administrative Procedure Act 30 n.3 (1947). Unlike "substantive rules," interpretive rules do not "have the force and effect of law." *Id.* Together with policy statements, interpretive rules "are often referred to as 'guidance' or 'guidance documents.'" Admin. Conf. of the U.S., Recommendation 2017-5, *Agency Guidance Through Policy Statements*, 82 Fed. Reg. 61,734 (Dec. 29, 2017). We adopt that nomenclature and refer to the Department's interpretive rules as "guidance."

The Department's guidance is "not controlling upon the courts," but does "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (addressing FLSA guidance); *see Freeman v. Nat'l Broad. Co.*, 80 F.3d 78, 83 (2d Cir. 1996) ("Unlike regulations, interpretations are not binding and do not have the force of law."). The Department's guidance is entitled to deference "depend[ing] upon the thoroughness evident in its consideration, the validity of its

§§ 775.1 ("Advisory interpretations announced by the Administrator serve only to indicate the construction of the law which will guide the Administrator in the performance of his administrative duties . . . ."), 785.2.  The Department's meal period guidance states:

> **(a)  *Bona fide meal periods*.**  Bona fide meal periods are not worktime.  Bona fide meal periods do not include coffee breaks or time for snacks.  These are rest periods.  The employee must be completely relieved from duty for the purposes of eating regular meals.  Ordinarily 30 minutes or more is long enough for a bona fide meal period.  A shorter period may be long enough under special conditions.  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.  For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. . . .
>
> **(b)  *Where no permission to leave premises*.**  It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

29 C.F.R. § 785.19.  We interpreted and applied this guidance in *Kohlheim*.  *See* 915 F.2d at 1477 n.20 ("[W]e join the other circuits which have adopted the mealtime exclusion standards of § 785.19 as an appropriate statement of the law.").  In *Kohlheim*, we stated that "what matters in meal period cases is whether the employees are subject to real limitations on their personal freedom which inure to the benefit of their employer."  *Id.* at 1477 n.19; *see id.* at 1477 (noting that an employee must not be subject to "significant affirmative responsibilities"); *see also*

reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *Skidmore*, 323 U.S. at 140.

31

*Jenkins v. Anton*, 922 F.3d 1257, 1269–70 (11th Cir. 2019); *Avery v. City of Talladega*, 24 F.3d 1337, 1345 (11th Cir. 1994).  This test is called the "real limitations" test.[9]  *Avery*, 24 F.3d at 1346.

The Empty Return Leg meal periods qualify as bona fide meal periods under 29 C.F.R. § 785.19 because Akal demonstrated that the ASOs were completely relieved from duty and the limitations on the ASOs' personal freedom did not inure to Akal's benefit.  Akal's meal period policy explicitly states that, during the meal periods, "ASOs . . . will be expected to disengage from work duties and may use their time as they wish."  Gelber does not meaningfully dispute that the ASOs had no affirmative work duties during the Empty Return Leg meal periods.

---

[9] Other courts apply the "predominant benefit" test.  *See Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 64–65 (2d Cir. 1997); *Babcock v. Butler Cnty.*, 806 F.3d 153, 156 (3d Cir. 2015); *Roy v. Cnty. of Lexington*, 141 F.3d 533, 545 (4th Cir. 1998); *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 264–65 (5th Cir. 1998); *Ruffin v. MotorCity Casino*, 775 F.3d 807, 811 (6th Cir. 2015); *Leahy v. City of Chicago*, 96 F.3d 228, 230 n.2 (7th Cir. 1996); *Guyton v. Tyson Foods, Inc.*, 767 F.3d 754, 763 (8th Cir. 2014); *Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1253–54 (10th Cir. 2016); *cf. Brennan v. Elmer's Disposal Serv., Inc.*, 510 F.2d 84, 88 (9th Cir. 1975) (applying the "completely-relieved-from-duty" test).  Under the "predominant benefit" test, "[t]he critical question is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee."  *Bernard*, 154 F.3d at 264–65.  This test parallels the Supreme Court's definition of "work."  *See Armour & Co.*, 323 U.S. at 133 (examining "[w]hether time is spent predominantly for the employer's benefit or for the employee's").

Akal requests that we apply the "predominant benefit" test here.  Gelber counters that we may not apply the "predominant benefit" test because we are bound by our prior decision in *Kohlheim*.  It is not necessary to resolve this dispute because, in my view, Akal prevails under either test.  In any event, the "real limitations" test is likely just "[a] version of the predominant benefit test."  *Babcock*, 806 F.3d at 156; *cf. Leahy*, 96 F.3d at 230 n.2 ("An employee is considered to be completely relieved from duty during a meal period when the employee's time is not spent predominantly for the benefit of the employer.").

Gelber does, however, identify several limitations that the ASOs were subjected to during the Empty Return Leg meal periods, such as not being able to leave the aircraft, stop at home, pick up or drop off laundry, go to the bank, or take an exercise class. But he failed to demonstrate that these limitations qualified as "real limitations"—that is, that these limitations inured to Akal's benefit.

In *Jenkins*, we found that certain meal periods were bona fide even though the employees stayed at their employer's facility throughout lunch and talked about the work that they were doing. 922 F.3d at 1270. By contrast, in *Kohlheim*, "the [plaintiff] firefighters were required to remain at the station and were subject to emergency calls" during mealtimes. 915 F.2d at 1477. We found that these restrictions "benefit[ed] the [employer] by ensuring maintenance of an available pool of competent firefighters for immediate response to emergency situations," and that the challenged mealtimes were compensable worktime. *Id*. But we have never held that a bona fide meal period only covers the time during which an employee eats a meal—instead, that time belongs to the employee. *See Jenkins*, 922 F.3d at 1270.

Unlike the limitations in *Kohlheim*, the limitations on the ASOs in this case are consequences of being on an airplane and did not inure to Akal's benefit. *See* 29 C.F.R. § 785.19(b) ("It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal

33

period."). Akal derived no benefit from the ASOs being unable to stop at home, pick up or drop off laundry, go to the bank, or take an exercise class during the Empty Return Leg meal periods.[10] On the other hand, ASOs could engage in a host of activities inuring to their benefit (or even activities accruing to Akal's detriment, for instance, an ASO could spend that time applying for employment at Akal's competitors), leaving, at the very least, an hour where an ASO was "completely relieved from duty" and had the personal discretion to use it "for the purposes of eating regular meals" or just about anything else. 29 C.F.R. § 785.19. Accordingly, the Empty Return Leg meal periods were bona fide meal periods and Akal did not violate the FLSA by deducting them from the ASOs' timesheets.[11]

Gelber argues that the Department's travel time guidance requires a different outcome. He is incorrect. The travel time guidance states that "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38; *see id.* § 790.8(a), (b) (defining "principal activity" as any activity the

---

[10] Gelber also argues that the Empty Return Leg meal periods were not bona fide because "the aircraft [wa]s dirty and smelly," preventing the ASOs from eating. But he conceded below that "ASOs eat some food . . . during the outbound flight while the deportees are on board," undermining his argument that the ASOs are unable to eat aboard the aircraft.

[11] Other courts that have examined Akal's meal period policy also have concluded that the Empty Return Leg meal periods are bona fide meal periods. *See Dean*, 3 F.4th at 144–46 (applying the "predominant benefit" test); *Alonzo*, 807 F. App'x at 719–720 (applying the "completely relieved from duty" test).

employee is "employed to perform"). But the travel time guidance does not preclude a bona fide meal period from occurring during travel time. *See Dean*, 3 F.4th at 141–42. In fact, other DOL travel guidance on "[w]ork performed while traveling" specifically carves out meal periods: "[a]n employee who drives a truck, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, *except during bona fide meal periods*." 29 C.F.R. § 785.41 (emphasis added); *see Hilley v. Tacala, L.L.C.*, No. 2:12-CV-2691, 2014 WL 1246364, at *17 (N.D. Ala. Mar. 24, 2014) ("Travel time does not include a bona fide meal period."). Gelber also argues that "[a] plain reading of [29 C.F.R. § 785.41] shows . . . that [this exception] is applicable only to those employees who 'drive' the airplane or such pilots' helpers." But this guidance applies to "an[y] employee who is required to ride [an airplane] as an assistant or helper," 29 C.F.R. § 785.41, which would include the ASOs. Thus, the travel time guidance actually works against Gelber and does not require Akal to compensate the ASOs for the Empty Return Leg meal periods.[12]

---

[12] Gelber also argues that Empty Return Leg meal periods were compensable waiting time because the ASOs were required to unload equipment from the airplane after returning to Miami. He forfeited this argument by failing to raise it below. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

Regardless, his argument fails. "Whether waiting time is time worked under the [FLSA] depends upon particular circumstances" and "involves 'scrutiny and construction of the agreements between particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the circumstances.'" 29 C.F.R. § 785.14 (quoting *Skidmore*, 323 U.S. at 137). In

Gelber's final argument is that Akal violated the FLSA by automatically deducting an hour for the Empty Return Leg meal periods, without regard to when the meal period took place. Although Gelber concedes that automatically-deducted meal periods are not *per se* unlawful, he cites *Harp v. Starline Tours of Hollywood, Inc.*, No. 14-cv-7704, 2015 WL 4589736, at *6–7 (C.D. Cal. July 27, 2015), for the proposition that Akal had an impermissible "policy to violate a policy." In *Harp*, the court found that an employer violated the FLSA because it had a policy to prevent its employees from taking lunch breaks while still automatically deducting an hour for those breaks—a "policy to violate a policy." *Id.* at *6. But *Harp* is plainly inapposite here—Akal did not have a policy to prevent the ASOs from taking meal periods on the Empty Return Legs or of refusing to compensate the ASOs for meal periods they worked through. *See id.* at *7 ("Again, it is not 'the mere existence' of an automatic deduction mechanism that violates the FLSA, but rather, it is the 'failure of an employer to compensate employees who work

---

general, when an "employee is unable to use [a waiting period] effectively for his own purposes," the waiting period is compensable. *Id.* § 785.15 (noting that "on duty" waiting periods are usually "unpredictable" and "of short duration"); *see id.* § 785.17 ("An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'"). But when "an employee is completely relieved from duty" and can "use [the waiting period] effectively for his own purposes," the waiting period is not compensable. *Id.* § 785.16 (noting that for "off duty" waiting periods, an employee "is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived"). Because the ASOs were completely relieved from duty during the Empty Return Leg meal periods, those periods were not compensable waiting time.

through those unpaid breaks . . . .'" (quotation omitted)).  Because Gelber has provided no evidence that Akal had a policy of preventing the ASOs from taking their meal periods or that Akal refused to compensate the ASOs for meal periods they worked through, he failed to demonstrate that Akal's automatic deduction mechanism violated the FLSA.

*        *        *

The majority comes to a different conclusion.  According to the majority, Akal bore the burden—but failed—to show that the ASOs were completely relieved from duty for the purpose of eating regular meals.  The majority's reasoning requires a lot of unpacking.

The majority first attempts to shift the burden to Akal to prove that Gelber *did not* perform work for which he was not properly compensated.  Despite the majority's acknowledgement that, ordinarily, the employee has the burden of "proving that he performed work for which he was not properly compensated," the majority skips over the question of whether Gelber actually met that burden. Instead, the majority simply declares that "the employer bears the burden" in meal period cases under the FLSA and then spends several pages discussing a burden-shifting rule that is not actually implicated here.[13]  Tucked away in the middle of

---

[13] Gelber himself would be confused by the majority's burden-shifting analysis, given his admission that, "in order to establish that a purported meal-period should be compensable,

37

that discussion is an admission that meal periods are not "hours worked" as defined by the FLSA, *see* 29 U.S.C. § 203(o); 29 C.F.R. § 785.19, and an admission that "in meal-period cases, the employee bears the initial burden to show that the meal period constituted work." Thus, even applying the majority's burden-shifting framework, the threshold question remains: did Gelber demonstrate that he performed work for which he was not properly compensated?

The majority ultimately answers that question in the affirmative. But its answer deserves an asterisk because the majority first concedes the exact opposite—that Gelber failed to make "any affirmative showing" that he performed work for which he was not properly compensated. The majority goes on to claim that Gelber satisfied his initial burden "because of the way that Akal litigated this case." Apparently, Akal conceded that "idle time spent on the Empty Return Leg is compensable travel time." Case closed. But Akal did not make that concession—the majority just made it up.[14] Here is the majority's case-dispositive "concession" in context:

---

employees must demonstrate that they were not completely relieved of duty or that their activities predominately benefited the employer."

[14] It is thus no wonder that the majority is confused by the concession. The majority expresses doubt whether Akal's "concession" "may or may not be correct." It remarks that it is "[o]dd[]" that "Akal disavows any challenge to the compensability of the Empty Return Leg[s] as a general matter," given its other litigating positions. And it acknowledges that "Akal *could have* argued that the entire Empty Return Leg isn't compensable work." Perhaps the reason the majority is so confused by Akal's concession is because Akal never made it.

> **Judge Newsom:** Do I understand correctly that you don't deny that the entirety of the—the flight, the return flight—is compensable. Correct?
>
> **Akal:** So, the entirety of the Empty Return Leg is compensable *except for the meal period*, pursuant to section 785.41, yes.

Oral Arg. Recording at 7:43–8:07 (emphasis added).

This purported concession does not satisfy Gelber's burden to demonstrate that he performed work for which he was not properly compensated. Akal did not concede that the Empty Return Leg *meal periods* are compensable hours worked— only that the rest of the Empty Return Leg is compensable.[15] Without the majority's invented concession, its conclusion that Gelber satisfied his initial burden crumbles.

As demonstrated by its full context, 29 C.F.R. § 785.41 makes clear that an employee riding on an airplane is not working during bona fide meal periods, and the majority concedes both that meal periods are not "hours worked" as defined by the FLSA, *see* 29 U.S.C. § 203(o); 29 C.F.R. § 785.19, and that "in meal-period cases, the employee bears the initial burden to show that the meal period constituted work." Because Gelber failed to identify a single affirmative work duty imposed on the ASOs during the Empty Return Leg meal periods, or that the

---

[15] Curiously, the majority truncates 29 C.F.R. § 785.41 in the exact same way it clips Akal's concession from oral argument. It quotes 29 C.F.R. § 785.41 for the proposition that "[a]ny work which an employee is required to perform while traveling must . . . be counted as hours worked," but omits the rest of the section, which states that an employee riding on an airplane "is working while riding, *except during bona fide meal periods*." *Id.* (emphasis added).

ASOs were "subject to real limitations on their personal freedom which inure to the benefit of their employer," *Kohlheim*, 915 F.2d at 1477 n.19,[16] he failed to satisfy his initial burden.[17]

So how, then, does the majority reach its conclusion that Gelber satisfied his initial burden? It does so by claiming that "the meal breaks must . . . be compensable—because there is *nothing* that distinguishes the 'meal breaks' from any other time on the flight." This claim suffers from two fatal flaws.

First, the majority is factually wrong. There *is* a key distinction between the meal periods and the rest of the Empty Return Legs: Akal could impose work

---

[16] The majority accuses me of misinterpreting *Kohlheim* to adopt the "predominant benefit" test. The majority is mistaken. Like our binding decisions in *Jenkins* and *Avery*, I read *Kohlheim* as adopting the "real limitations" test and have applied it throughout this dissent.

The majority poses a false dichotomy—a court can apply either the "completely-relieved-of-duty" test or the "predominant benefit" test. I disagree with the majority's analytical framework. Both the "real limitations" test and the "predominant benefit" test are attempts to give effect to the language of the FLSA and 29 C.F.R. § 785.19's use of the phrase "completely relieved of duty." In our circuit, an employee is completely relieved of duty if he is not "subject to real limitations on [his] personal freedom which inure to the benefit of [his] employer." *Kohlheim*, 915 F.2d at 1477 n.19. In other circuits, an employee is completely relieved of duty if the "meal period is used predominantly or primarily . . . for the benefit of the employee." *Bernard*, 154 F.3d at 264–65. Gelber might be surprised by this approach, given his admission that "a key factor [in the meal period analysis] is whether 'employees are subject to real limitations on their personal freedom which inure to the benefit of the employer.'"

[17] Even if Gelber had met his initial burden to show the meal period constituted work and shifted the burden to Akal to demonstrate that Gelber was completely relieved from duty during the Empty Return Leg meal periods, Akal satisfied that burden. Akal introduced its timekeeping policy, which provides that during the Empty Return Leg meal periods, "ASOs . . . will be expected to disengage from work duties and may use their time as they wish." In response to this evidence, Gelber was unable to identify a single affirmative work duty that was imposed on the ASOs during the Empty Return Leg meal periods or that the ASOs were "subject to real limitations on their personal freedom which inure[d] to the benefit of their employer," *Kohlheim*, 915 F.2d at 1477 n.19.

40

duties on the ASOs during the Empty Return Legs but could not impose work duties on the ASOs during the meal periods. *See* Oral Arg. Recording at 9:00–9:30 ("Akal could have imposed duties on these ASOs for the entire Empty Return Leg, had they not had the meal period policy in place . . . ."); *id.* at 10:12–26 ("However, were Akal to have elected to, it could have said: 'Hey, look. For the one-and-a-half hour[s] that we're paying you, we're actually going to impose work duties on you.' Akal just elected not to do that."). Thus, Akal's concession that the Empty Return Legs were compensable except for the meal periods has no effect on the compensability of the meal periods.

Second, the majority's claim is legally flawed. The reason why nothing distinguishes the meal periods from the rest of the Empty Return Legs is because the ASOs had no affirmative work duties during any part of the Empty Return Legs. Under the majority's reasoning, Akal could have deducted for the Empty Return Leg meal periods had it only assigned work duties to the ASOs during the Empty Return Legs instead of giving them the entire time off. As Akal put it at oral argument: "Certainly, it shouldn't be to Akal's detriment that it elected to allow its ASOs to have [an] additional period of paid relaxation." *Id.* at 10:27–10:40.

But make no mistake, the majority today punishes Akal for its act of grace. As the majority explains, "[an] employer can demonstrate a bona fide meal break

41

by affirmatively showing that something different happens during the meal period—specifically, disengagement from th[e employee's] affirmative duties." So, because the ASOs have no affirmative duties whatsoever during the Empty Return Legs, the majority concludes that the ASOs cannot "disengage" and cannot be completely relieved from duty for the purpose of eating regular meals. Put another way, the majority concludes that because the ASOs are completely relieved of duty during the entire two hour flight home, they *cannot be* completely relieved of duty during any 60 minute period during the flight. To state the majority's argument is to refute it.

The majority warns that adopting Akal's position would yield absurd results. According to the majority, "Akal's argument proves too much—namely, that *the entire Empty Return Leg* isn't compensable." Worse yet, the majority warns, "what would prevent Akal from simply increasing the duration of the 'meal period' from an hour to two, three, or four hours?" Unmasked, this parade of horribles is really just a parade of disappointments.

First, Akal's argument does not prove too much—Akal does not even argue that the entire Empty Return Leg is not compensable and the issue is not before us. Instead, Akal admits that the entire Empty Return Leg, except for the meal periods, is compensable under 29 C.F.R. § 785.41. *See* Oral Arg. Recording at 7:55–8:07. This position is supported by the text of 29 C.F.R. § 785.41, which states that "[a]n

42

employee who drives . . . [an] airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods."

Second, the FLSA and the Department of Labor's meal period guidance would prevent an employer from increasing the duration of the meal period to an unreasonable amount of time. Under 29 C.F.R. § 785.19, only "[b]ona fide meal periods are not worktime." For a meal period to be bona fide, "[t]he employee must be completely relieved from duty for the purposes of eating regular meals." *Id.* This limitation—that a meal period has to be bona fide, which means that an employee must be completely relieved from duty for the purpose of eating regular meals—squarely resolves the majority's concern.[18] *See* Oral Arg. Recording at 32:50–32:55 ("[W]e typically do talk about the lunch hour, and people are typically given no longer than an hour for lunch.").

## III.    Conclusion

The Empty Return Leg meal periods were bona fide meal periods that were not compensable because the ASOs were completely relieved from duty and the

---

[18] At oral argument, my colleague expressed concern that a court would not be able to determine whether a meal period was bona fide. *See* Oral Arg. Recording at 32:27–32:37 ("Just because some court would say, in our experience—like—we take judicial notice of the fact that people eat lunch for an hour? That seems hard for me to imagine."). But in a case that actually presented the question of how long a meal period can be and still remain bona fide, I would expect the parties to introduce evidence—potentially of local customs or industry practice—that would enable the court to make such a determination. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (describing "the principle of party presentation").

limitations on the ASOs' freedom did not inure to Akal's benefit. The Department of Labor's travel time guidance does not disturb this conclusion, nor did Gelber demonstrate that Akal violated the Department's record-keeping guidance by automatically deducting for the meal periods. Accordingly, Akal did not violate the FLSA. I respectfully dissent.